**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2012

(Argued: April 9, 2013                    Decided:    April 23, 2015)

Docket No. 11-1397-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

IN RE KINGATE MANAGEMENT LIMITED LITIGATION

CRITERIUM CAPITAL FUNDS B.V., BBF TRUST, WALL STREET SECURITIES, S.A., BANCA ARNER S.A., ALVARO CASTILLO, on behalf of themselves and all others similarly situated, EITHAN EPHRATI, ANDBANC, SILVANA WORLDWIDE CORPORATION, BG VALORES, S.A., JAQUES LAMAC, NITKEY HOLDINGS CORPORATION,

*Plaintiff-Appellants*,

LUCIEN GELDZAHLER,

*Plaintiff-Consolidated Defendant-Appellant*,

v.

TREMONT (BERMUDA) LIMITED, GRAHAM H. COOK, JOHN E. EPPS, SANDRA MANZKE, FIM ADVISERS LLP, CHARLES SEBAH, KEITH R. BISH, CHRISTOPHER WETHERHILL, MICHAEL G. TANNENBAUM, TREMONT GROUP HOLDINGS, INCORPORATED, PRICEWATERHOUSECOOPERS LLP,

*Defendant-Appellees*,

KINGATE MANAGEMENT LIMITED, FIM (USA) INCORPORATED, CITI HEDGE FUND SERVICES LTD.,

*Defendant-Consolidated Defendant-Appellees,*

PRICEWATERHOUSECOOPERS BERMUDA, CARLO GROSSO, FIM LIMITED, FEDERICO M. CERETTI,

*Consolidated Defendant-Appellees,*

BERNARD L. MADOFF, PHILLIP A. EVANS, MARGARET EVERY, SHAZIEH SALAHUDDIN, JOHANN WONG, PRESTON M. DAVIS, BANK OF BERMUDA LIMITED,

*Defendants,*

PRICEWATERHOUSECOOPERS, ANDORRA BANC AGRICOL REIG S.A., on behalf of itself and on behalf of all others similarly situated,

*Consolidated Defendants.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before:       KATZMANN, *Chief Judge*, LEVAL and HALL, *Circuit Judges.*

Plaintiffs appeal from the judgment of the United States District Court for the Southern District of New York (Batts, *J.*) dismissing their state law class action claims as precluded by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") and denying leave to re-plead as futile. The Court of Appeals (Leval, *J.*) holds that SLUSA's preclusion provisions apply only to state law class action claims that charge the defendant with the false conduct specified in SLUSA, quoted or paraphrased from the Securities Act of 1933 and the Securities

Exchange Act of 1934. We VACATE the district court's judgment of dismissal and REMAND.

DAVID A. BARRETT (S. Douglas Bunch, Steven J. Toll, Lisa M. Mezzetti, Daniel S. Sommers, Joshua S. Devore, Cohen Milstein Sellers & Toll PLLC, New York, NY; David Boies, Boies, Schiller & Flexner LLP, Armonk, NY; Stuart H. Singer, Carl E. Goldfarb, James Grippando, Boies, Schiller & Flexner LLP, Ft. Lauderdale, FL, *on the brief*), Boies, Schiller & Flexner LLP, New York, NY, *for Plaintiff-Appellants*.

SETH M. SCHWARTZ, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, *for Defendant-Appellees* Tremont (Bermuda) Limited and Tremont Group Holdings, Inc.

HOWARD J. RUBIN (Bruce M. Ginsberg, *on the brief*), Davis & Gilbert LLP, New York, NY, *for Defendant-Appellees* Graham H. Cook, John E. Epps, and Charles D. Sebah.

CARMINE D. BOCCUZZI (David Y. Livshiz, *on the brief*) Cleary Gottlieb Steen & Hamilton LLP, New York, NY, *for Defendant-Appellee* Citi Hedge Fund Services, Ltd.

SANFORD M. LITVACK (Dennis H. Tracey, III, Lisa J. Fried, *on the brief*), Hogan Lovells US LLP, New York, NY, *for Defendant-Appellee* PricewaterhouseCoopers Bermuda.

JODI A. KLEINICK (Barry G. Sher, Mor Wetzler, *on the brief*), Paul Hastings LLP, New York, NY, *for Defendant-Appellees* FIM Advisers LLP, FIM Limited, FIM (USA), Inc., Carlo Grosso, and Federico H. Ceretti.

John Han, Jonathan D. Cogan, Carrie A. Tendler, Kobre & Kim LLP, New York, NY, *for Defendant-Appellee* Sandra Manzke.

Peter R. Chaffetz, Charles J. Scibetta, Erin E. Valentine, Chaffetz Lindsey LLP, New York, NY, *for Defendant-Appellees* Kingate Management Limited and Christopher Wetherhill.

Laura Grossfield Birger, Cooley LLP, New York, NY, *for Defendant-Appellee* Michael Tannenbaum.

Michael S. Flynn, Michael P. Carroll, James H.R. Windels, Davis Polk & Wardwell LLP, New York, NY, *for Defendant-Appellee* PricewaterhouseCoopers LLP.

LEVAL, *Circuit Judge*:

In this appeal, we confront a number of textual ambiguities as to the scope of the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), Pub. L. No. 105-353, § 101, 112 Stat. 3227 (1998), which bars the maintenance of certain state-law-based class actions alleging falsity[1] in connection with transactions in categories of securities that the Act identifies as "covered securities." Plaintiffs appeal from the judgment of the United States District Court for the Southern District of New York (Batts, *J.*), which dismissed their state-law class action claims as precluded by SLUSA, and denied leave to re-plead as futile.

The ambiguities of SLUSA that we confront in considering this appeal include, first, the relationship of the transaction in covered securities to the alleged false conduct, second, the relationship of the alleged false conduct to the

---

[1] We use the terms "falsity" and "false conduct" to encompass all the types of misleading or deceptive conduct identified in the relevant SLUSA provisions (including a misrepresentation or omission of a material fact, an untrue statement, and the use or employment of any manipulative or deceptive device or contrivance). We use the term "anti-falsity provision" to refer to the provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934 that prohibit false, misleading, or deceptive conduct.

state law theory of liability, and third, the relationship of the defendant to the alleged false conduct, necessary in each case to bring a state-law class action suit within the scope of SLUSA's prohibitions.

With respect to the first ambiguity regarding the relationship between the securities transaction and the false conduct, two court decisions made since this appeal was argued govern our consideration. First is the Supreme Court's ruling in *Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1058 (2014); second, a panel of this court recently interpreted the *Chadbourne* decision in *In re Herald*, 753 F.3d 110 (2d Cir. 2014) ("*Herald II*"). Under *Herald II*, we conclude that the alleged fraud in the instant case is "in connection with the purchase or sale of a covered security" and thus qualifies to bring the case within SLUSA's prohibition (assuming SLUSA's other necessary elements are met). 15 U.S.C. § 78bb(f)(1).

The second and third issues are complicated in this case by the numerous distinct state law theories of liability asserted in the Complaint. Our analysis of the statute leads us to the conclusions that: i) state law claims that do not *depend* on false conduct are not within the scope of SLUSA, even if the complaint

includes peripheral, inessential mentions of false conduct; and ii) claims accusing

the defendant of complicity in the false conduct that gives rise to liability *are*

subject to SLUSA's prohibition, while claims of false conduct in which the

defendant is *not* alleged to have had any complicity are not.

**I.  BACKGROUND**

The operative Amended Consolidated Class Action Complaint (the

"Complaint"),[2] filed May 18, 2010, following Plaintiffs' voluntary dismissal of

their federal claims,[3] asserts only claims under state law. It alleges the following

facts.

Plaintiffs are individuals and entities, each of which purchased shares in

Kingate Global Fund, Ltd. ("Kingate Global") and/or Kingate Euro Fund, Ltd.

("Kingate Euro") (collectively, the "Funds") and continued to hold their shares

---

[2] The Complaint was filed following the district court's consolidation of five class actions pursuant to Federal Rule of Civil Procedure 42.

[3] The Complaint initially asserted claims under the Securities Exchange Act of 1934 (Counts 29, 30, 31 and 32), but, following the Supreme Court's decision in *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010), Plaintiffs voluntarily dismissed these claims.

until the exposure in December 2008 of the Ponzi scheme operated by Bernard L. Madoff and Bernard L. Madoff Investment Securities LLC ("BMIS"), a broker-dealer founded and run by Madoff. The Madoff Ponzi scheme resulted in the loss of the great majority of the Funds' assets. The Complaint asserts a class action on behalf of all shareholders in the Funds (with the exception of Defendants and certain affiliates of Defendants) as of the time Madoff's fraud was exposed.

The Funds are open-ended investment companies organized and operating in the British Virgin Islands. Defendants are persons and entities that served in roles affiliated with the Funds, including officers, directors, and managers of the Funds (the "Managers"), auditors (the "Auditors"), a consultant (the "Consultant"), and the Funds' administrator ("Administrator"). The names and roles of the defendants in connection with the Funds are set forth in the margin.[4]

---

[4] Defendants are: Kingate Management Limited ("KML"), a Manager; Tremont (Bermuda) Limited ("TBL"), a Manager; Tremont Group Holdings, Inc.

Plaintiffs invested in the Funds by purchasing shares. It appears to be common ground in this appeal that the shares of the Funds are not "covered securities," as defined by SLUSA, so that if the applicability of SLUSA depends on the plaintiffs' purchase of those shares, SLUSA cannot apply. The plaintiffs' expectations, however, based on the declared intentions of the Funds, was that the Funds would invest in common stock of Standard & Poors ("S&P") 100 companies, listed on United States exchanges. The latter securities are "covered securities" under the terms of SLUSA.

---

("Tremont"), TBL's corporate parent; FIM Advisers LLP ("FIM Advisers"), the Consultant; FIM Limited, the predecessor in interest of FIM Advisers; FIM (USA) Incorporated, an affiliate of FIM Advisers; Carlo Grosso, Executive Chairman and Chief Investment Officer of FIM Advisers and former Executive Chairman and Chief Investment Officer of FIM Limited; Federico M. Ceretti, Chief Executive Officer of FIM Advisers; Sandra Manzke, former Chairman and co-Chief Executive Officer of Tremont and former Director of Kingate Global; Graham H. Cook, Director of the Funds; John E. Epps, Director of the Funds; Charles D. Sebah, former Director of Kingate Global; Keith R. Bish, former Director of Kingate Global; Christopher Wetherhill, Director of the Funds and KML; Michael G. Tannenbaum, Director of KML; PricewaterhouseCoopers Bermuda, an Auditor; PricewaterhouseCoopers LLP, an Auditor; and Citi Hedge Fund Services Ltd., the Administrator.

The Funds operated as "feeder funds" for BMIS, meaning that the Funds delegated custody of the investments and all investment decisions and duties to Madoff and BMIS. Between March 1994 and December 10, 2008, Kingate Global gave BMIS $963.45 million to invest for its account. Between May 1, 2000, and December 10, 2008, Kingate Euro gave BMIS $767.44 million of its funds to invest for its account. During those periods, BMIS provided the Funds with periodic account statements. The statements purported to show purchases and sales for the Funds' accounts of "covered securities"—common stock of major companies included in the S&P 100 Index, and of options on the S&P 100 Index. According to the account statements, those investments produced a continuous course of very substantial profits and growth, so that by November 30, 2008, the Funds' investments with BMIS had grown to a combined value of over $3 billion.

As was revealed in December 2008, however, the investments made by BMIS on behalf of the Funds turned out to be entirely fictitious. BMIS had made no purchases or sales of securities, and there were no profits or growth in its customers' accounts. Madoff had used the assets invested through BMIS either

for his personal benefit or for distribution to account holders who demanded withdrawal of their investments. The Funds' investments through BMIS, which represented substantially all of the Funds' assets, were lost to Madoff's fraud.

Prior to the exposure of Madoff's scheme, the Funds, and the defendants speaking on their behalf, represented to their investors that the Funds' assets were being invested by an unnamed investment advisor, who was realizing substantial growth for the accounts of the Funds, using a trading strategy that involved purchasing S&P 100 stocks while concurrently selling call options and buying put options on the S&P 100 Index.

According to the allegations of the Complaint, in statements to investors, the Managers undertook obligations to evaluate and monitor the investment advisor, and the Auditors undertook obligations to audit the Funds' financial statements in accordance with established accounting principles. Each falsely represented to the Funds' investors from time to time (according to the allegations of the Complaint) that they had performed those obligations, when in fact they had not. The Administrator similarly undertook the obligation to

11

determine the Funds' values and periodically made allegedly false representations to the Funds' investors of values that accorded with values reported by BMIS.

**II.   PROCEEDINGS BELOW**

The Complaint asserts twenty-eight class action claims, each based on state common law. Some of the claims are based on false conduct; other claims are based on breach of other legal duties. The claims include fraud, constructive fraud, negligent misrepresentation, negligence, gross negligence, breach of contractual obligations, breach of fiduciary duties, constructive trust, mutual mistake, unjust enrichment, and aiding and abetting various aforementioned violations. Some of the numbered claims of the Complaint assert more than one theory of liability.[5] We divide all of the allegations into five groups for purposes

---

[5] For example, Count 28 alleges unjust enrichment against all defendants based, in part, on their previously alleged "unlawful acts," which are not specified in Count 28. Joint App'x 188. Thus, while Count 28 only includes a single cause of action, it is potentially predicated on every other theory of liability.

of analyzing SLUSA's application, with the understanding that certain counts of the Complaint may include allegations from more than one of these groups.

1.  Group 1 consists of those allegations that predicate the named Defendants' liability on their own fraudulent misrepresentations and misleading omissions (i.e., those made with scienter), made in connection with the Funds' investments with Madoff in covered securities and with their oversight of these investments.

2.  The allegations of Group 2 are similar to Group 1, with the exception that liability is premised on the named Defendants' *negligent* misrepresentations and omissions, rather than intentional misrepresentations and omissions.

3.  The Group 3 allegations predicate liability on Defendants' aiding and abetting (rather than directly engaging in) the frauds underlying the Group 1 claims.[6]

---

[6] The allegations falling in Groups 3, 4, and 5 do not include allegations proof of which depends on a showing that the named Defendants committed knowing,

4. The allegations of Group 4 predicate liability on Defendants' breach of contractual, fiduciary, or tort-based duties owed to Plaintiffs, resulting in failure to detect the frauds of Madoff and BMIS.[7]

5. The allegations of Group 5 seek compensation for fees paid to the named Defendants by the Funds on the grounds that those Defendants failed to perform the duties for which the fees were paid, or that the fees based on purported profits and values of the Funds were computed on the basis of inaccurate values.[8]

Defendants moved for dismissal of the Complaint, on the grounds, *inter alia*, that the claims are all precluded by SLUSA. The district court agreed, finding essentially that each of the claims included false conduct in connection with transactions in covered securities. It dismissed the Complaint under Federal

---

intentional, or negligent misrepresentations or misleading omissions in connection with transactions in covered securities. If allegations that otherwise fit within the description of Group 3, 4, or 5, require proof that the Defendants committed such misrepresentations, then those allegations belong in Group 1 or 2 rather than in Group 3, 4, or 5.

[7] *See supra* note 6.

[8] *See supra* note 6.

Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[9] *In re Kingate Mgmt. Ltd. Litig.*, No. 09 Civ. 5386, 2011 WL 1362106, at *9 (S.D.N.Y. Mar. 30, 2011) ("[T]he Court concludes that SLUSA bars Plaintiffs from pursuing any of their claims as a class in any state or federal court. Each of Plaintiffs' state law claims must be and hereby is DISMISSED."). The district court also denied Plaintiffs' request for leave to re-plead their claims as futile. *Id.*

Plaintiffs brought this appeal.[10]

---

[9] Although the issue is not presented to us, we question whether a motion to dismiss pursuant to SLUSA is best considered under Rule 12(b)(6), as a motion to dismiss for failure to state a claim, or under Rule 12(b)(1) (and/or 12(h)(3)), as a motion to dismiss for lack of subject-matter jurisdiction. A dismissal under SLUSA simply means that the lawsuit "may [not] be maintained" *as a covered class action*. 15 U.S.C. §§ 77p(b), 78bb(f)(1). It does not adjudicate against any plaintiff the right to recover on the claim. A dismissal under SLUSA would not be with prejudice, barring a plaintiff from filing a new, non-covered action asserting the same claims against the same defendants.

[10] Because *Herald* was argued four days prior to the argument of this appeal, under our court's rules of precedence, this panel was not at liberty to decide this case until the final decision in *Herald*, which in turn was substantially delayed by the intervening decision of the Supreme Court in *Chadbourne*.

**III.  DISCUSSION**

Plaintiffs' principal contention on this appeal is that the district court erred in concluding that their claims are barred by SLUSA,[11] which, as noted above, bars the maintenance of certain state-law based class actions alleging falsity in connection with transactions in certain securities. The arguments presented require us to confront broad questions about the scope of SLUSA preclusion. We explore these questions in light of the sometimes ambiguous text, and the history and purpose of SLUSA.

A.    Terms, History, and Purpose of SLUSA

SLUSA's broad, general terms are in some respects ambiguous, so that it is not always easy to understand whether SLUSA applies. Understanding the scope of SLUSA's applicability requires not only, as always, study of the words of the

---

[11] "We review the district court's grant of a Rule 12(b)(6) motion to dismiss de novo, accepting all factual claims in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *In re Herald*, 730 F.3d 112, 117 (2d Cir. 2013) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

statute, but also, because of these ambiguities, an understanding of the prior statutory enactments that led to its passage. We begin with a brief review of that history.

"In response to the sudden and disastrous collapse [of the stock market] in 1929, and the Great Depression that followed, Congress enacted the Securities Act of 1933 (1933 Act), and the Securities Exchange Act of 1934 (1934 Act). Since their enactment, these two statutes have anchored federal regulation of vital elements of our economy." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 78 (2006) (citations omitted). As one treatise explains:

> Although the general economic conditions played a considerable role leading up to the Wall Street crash of 1929, the number of fraudulently floated securities that contributed to the great crash should not be underestimated. In fact, the congressional hearings which culminated in the first federal securities legislation are replete with examples of outrageous conduct by securities promoters that most certainly had a disastrous impact on our nation's economy. In relatively short order, Congress entered into the regulatory arena with its first major New Deal legislation—the [1933 Act].
>
> 1 Hazen, Law of Securities Regulation § 1.2[3] (2015).

"The scope of the [1933 Act] is limited; first, insofar as its registration and disclosure provisions cover only distributions of securities and second, as its investor-protection reach extends only to purchasers (and not sellers) of securities." *Id.* § 1.2[3][A]. The 1933 Act includes a number of anti-falsity provisions, including § 11, which imposes liability for registration statements "contain[ing] an untrue statement of a material fact or omitt[ing] to state a material fact required to be stated therein or necessary to make the statements therein not misleading," 15 U.S.C. § 77k(a), and § 12(a), which imposes liability for, *inter alia*, the offer or sale of a security "by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements . . . not misleading." *Id.* § 77*l*(a)(2). Section 17(a), the 1933 Act's "primary antifraud provision[]" and a "key weapon[] in the statutory arsenal for securing market integrity and investor confidence," *Aaron v. SEC*, 446 U.S. 680, 704 (1980) (Blackmun, J., concurring in part and dissenting in part), provides:

> It shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of

18

> transportation or communication in interstate commerce or by use of the mails, directly or indirectly (1) *to employ any device, scheme, or artifice to defraud*, or (2) *to obtain money or property by means of any untrue statement of a material fact* or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (3) *to engage in any transaction*, practice, or course of business *which operates or would operate as a fraud or deceit upon the purchaser*.

15 U.S.C. § 77q (emphasis added).

Following the 1933 Act, the scope of federal securities regulation was significantly expanded by the 1934 Act, which established the Securities and Exchange Commission (the "SEC") and "is directed at regulating all aspects of public trading of securities." Hazen, *supra*, at § 1.2[3][B]. "The dominant congressional purposes underlying the [1934 Act] were to promote free and open public securities markets and to protect the investing public from suffering inequities in trading, including, specifically, inequities that follow from trading that has been stimulated by the publication of false or misleading corporate information releases." *SEC v. Tex. Gulf Sulphur Co.*, 401 F.2d 833, 858 (2d Cir. 1968).

Section 10(b) is the 1934 Act's "primary antifraud provision[]" and is another "key weapon[] in the statutory arsenal for securing market integrity and investor confidence." *Aaron*, 446 U.S. at 704 (Blackmun, J., concurring in part and dissenting in part). Section 10(b) provides:

> It shall be unlawful for any person . . . by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . *[t]o use or employ*, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered . . . *any manipulative or deceptive device* or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j (emphasis added).

SEC Rule 10b-5, promulgated in 1942 pursuant to § 10(b), provides:

> It shall be unlawful for any person . . . (a) *To employ any device, scheme, or artifice to defraud*, (b) *To make any untrue statement of a material fact* or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) *To engage in any act*, practice, or course of business *which operates or would operate as a fraud or deceit* upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5 (emphasis added).[12]

The decades following the promulgation of these provisions saw extensive private litigation, primarily under § 10(b) and Rule 10b-5, against defendants alleged to have committed frauds in connection with purchases and sales of securities, including class actions brought on behalf of large groups of purchasers of securities against issuers, underwriters, and related persons.

In the 1990s, Congress concluded that a profusion of abusive, non-meritorious class actions alleging securities frauds under the federal securities laws had become injurious to "the entire U.S. economy." *See Dabit*, 547 U.S. at 81 (internal quotation marks omitted). In response, Congress passed the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), Pub. L. No. 104-67, 109 Stat. 737 (codified in scattered sections of titles 15 and 18 of the U.S.

---

[12] The differences in terminology among these provisions have led courts to conclude that scienter is a necessary element of a violation of §§ 10(b) and 17(a)(1) and Rule 10b-5, but is not a necessary element of a violation of §§ 11, 12(a)(3), or 17(a)(2)&(3). *See Aaron*, 446 U.S. at 701-02; *SEC v. Pentagon Capital Mgmt. PLC*, 725 F.3d 279, 285 (2d Cir. 2013); *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004).

Code). The PSLRA was designed to curtail in numerous ways abuses in claims brought under the anti-falsity provisions of the 1933 and 1934 Acts. *See Romano v. Kazacos*, 609 F.3d 512, 517 (2d Cir. 2010). Its provisions included limitations on recoverable damages and attorneys' fees, sanctions for frivolous litigation, stays of discovery pending resolution of motions to dismiss, numerous restrictions affecting the conduct of class actions, and onerous pleading requirements. *See Dabit*, 547 U.S. at 81-82.

After a period of experience under the PSLRA, Congress concluded that plaintiffs' attorneys were seeking to circumvent the PSLRA's limitations, which apply only to federal law claims, by pleading their claims as violations of state, rather than federal, law.[13] To prevent that evasion of the PSLRA's restrictions, Congress in 1998 enacted SLUSA, barring the maintenance in either state or federal court of specified state-law-based class actions.[14] *See Dabit*, 547 U.S. at 82;

---

[13] The PSLRA applies only to claims made under the 1933 and 1934 Acts. *See* 15 U.S.C. §§ 77z-1, 78u-4.

[14] *See* H.R. Rep. No. 105-640, p. 10 (1998) ("[S]ince passage of the [PSLRA], plaintiffs' lawyers have sought to circumvent the Act's provisions by exploiting

22

*In re Herald*, 730 F.3d 112, 118 (2d Cir. 2013) ("*Herald I*"); *Romano*, 609 F.3d at 517-18.

SLUSA has two separate preclusion provisions.[15] *See Romano*, 609 F.3d at 517 n.1. (In this opinion, we sometimes refer to the portions of SLUSA that assert its prohibition of the maintenance of certain actions as SLUSA's "operative provisions.") One amends the 1934 Act, and uses terminology substantially modeled on § 10(b) and Rule 10b-5 in specifying the types of claims to which it applies. The other amends the 1933 Act, using terminology substantially

---

differences between Federal and State laws by filing frivolous and speculative lawsuits in State court, where essentially none of the [PSLRA]'s procedural or substantive protections against abusive suits are available."); S. Rep. No. 105-182, pp. 3-4 (1998) (describing the "noticeable shift in class action litigation from federal to state courts" as a "disturbing trend," and noting that "the increased risk of state court class actions has had a chilling effect on the use of the 'safe-harbor' and other important provisions of the [PSLRA]").

[15] They are preclusion, not preemption, provisions because SLUSA "does not itself displace state law with federal law but makes some state-law claims non-actionable through the class-action device in federal as well as state court." *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 636 n.1 (2006). SLUSA "does not deny any individual plaintiff, or indeed any group of fewer than 50 plaintiffs, the right to enforce any state-law cause of action that may exist." *Dabit*, 547 U.S. at 87.

modeled on § 17(a). We set forth the statutory texts of the SLUSA preclusion provisions below.

The main operative provision of SLUSA's amendment to the 1934 Act tracks the terms of § 10(b) and Rule 10b-5. It reads as follows:

> No covered class action [16] based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging–(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security or (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1).

The parallel operative SLUSA provision that amends the 1933 Act is modeled in part on the terms of § 17(a). It provides:

---

[16] For both of SLUSA's preclusion provisions, "covered class action" includes, with certain exceptions, class actions seeking damages on behalf of unidentified plaintiffs, class actions seeking damages on behalf of more than 50 identified persons, and "any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which–(I) damages are sought on behalf of more than 50 persons; and (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose." 15 U.S.C. § 78bb(f)(5)(B); *id.* § 77p(f)(2).

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—(1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.[17]

*Id.* § 77p(b).

Under SLUSA, "a covered security" is a security that satisfies the standards set forth in § 18(b) of the 1933 Act. 15 U.S.C. § 78bb(f)(5)(E). "Under § 18(b) of the [1933 Act], a covered security is one that is 'listed, or authorized for listing, on [the national exchanges]' or that is 'issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940.'" *Romano*, 609 F.3d at 520 n.3 (quoting 15 U.S.C. § 77r(b)). SLUSA thus covers a narrower class of securities than the antifraud provisions of the securities statutes.

---

[17] As to the definition of "covered class action," see *supra* note 15.

Because the PSLRA and SLUSA were designed to remedy perceived abuses in the bringing of claims authorized by the anti-falsity provisions of the 1933 and 1934 Acts and SLUSA expressly replicates terms used in those provisions, there is a powerful argument that SLUSA should be understood to reach claims that allege conduct by the defendant that would violate those anti-falsity provisions of the 1933 and 1934 Acts referenced in SLUSA. The Supreme Court gave strong support to that proposition in *Dabit*, where it stated that, "[g]enerally, 'identical words used in different parts of the same statute are . . . presumed to have the same meaning.'" *Dabit*, 547 U.S. at 86 (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005)), and again in *Chadbourne, see* 134 S. Ct. at 1066-67 (relying on cases finding fraud "in connection with" a securities transaction for purposes of § 10(b) to interpret the same phrase for purposes of SLUSA).

The Supreme Court, nonetheless, ruled in *Dabit* that, where limitations on the scope of authority to bring *private* claims under the original § 10(b) was judicially narrowed by reasons of policy considerations imported by the Court

26

(rather than through interpretation of Congress's intention), and Congress's originally intended broader scope continues to apply to suits brought by the SEC, SLUSA will retain the broader meaning that coincides with the intentions of Congress in its passage of the original anti-falsity provisions. Thus in *Dabit*, the Court construed the "in connection with" phrase of SLUSA as applying to, and barring, class actions of persons induced by the defendant's falsities to *hold* securities, as Congress intended in passing § 10(b), even though the Supreme Court had ruled in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975), that only persons induced to buy or sell securities (and not persons induced to hold them) were authorized by § 10(b) to bring private claims. *Dabit*, 547 U.S. at 80.

Furthermore, courts have noted that plaintiffs should not be permitted to escape SLUSA by artfully characterizing a claim as dependent on a theory other than falsity when falsity nonetheless is essential to the claim, such as by characterizing a claim of falsity as a breach of the contractual duty of fair dealing. *See, e.g., Herald I*, 730 F.3d at 119 ("[W]e agree with the district court that, even

though the complaints do not style their claims . . . as securities fraud claims, the complaints' allegations nonetheless are precluded by SLUSA. Since SLUSA requires our attention to both the pleadings and the realities underlying the claims, plaintiffs cannot avoid SLUSA merely by consciously omitting references to securities or to the federal securities law." (internal quotation marks omitted)); *Atkinson v. Morgan Asset Mgmt., Inc.*, 658 F.3d 549, 555 (6th Cir. 2011) ("In deciding whether SLUSA applies, we review the substance of a complaint's allegations, and claimants cannot avoid its application through artful pleading that removes the covered words . . . but leaves in the covered concepts." (internal quotation marks omitted)); *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 311 (6th Cir. 2009) (claimant cannot avoid SLUSA through artful pleading that eliminates the covered words but retains the covered concepts); *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 304 (3d Cir. 2005) ("SLUSA stands as an express exception to the well-pleaded complaint rule, and its preemptive force cannot be circumvented by artful drafting.").

B.    The Scope of SLUSA

Having set forth the terms of SLUSA and the background that led to its passage, we turn to the questions not clearly resolved by its ambiguous text.

What is relatively clear about SLUSA's preclusion provisions is that they apply to, and thus preclude, state-law-based class actions, brought on behalf of at least 50 persons, that allege conduct set forth in SLUSA's operative provisions, which reference the anti-falsity provisions of the 1933 and 1934 Acts. *See Romano*, 609 F.3d at 518. At the same time, a number of questions arise as to the scope of these preclusions. The questions include:

A. Under what circumstances will false conduct be deemed to be "in connection with the purchase or sale of a covered security"?

B. Must the falsity of the conduct alleged in the complaint be essential to the state law theory of liability? Does inclusion of a superfluous allegation of false conduct make SLUSA apply?

C. Assuming SLUSA applies only to false conduct essential to the theory of liability, is it necessary to SLUSA's applicability that the defendant be charged with complicity in the falsity?

D. If one of the claims of a complaint is barred by SLUSA, does the statute require dismissal of the entire complaint, including claims that would not be barred if not joined in the complaint with the barred claim?

We turn to these issues.

1. SLUSA's requirement that the false conduct be "in connection with" a transaction in "covered securities."

SLUSA's operative provisions preclude only covered class actions that allege falsity "in connection with the purchase or sale of a covered security." We follow this Circuit's ruling in *Herald*, which interpreted the Supreme Court's decision in *Chadbourne*, and conclude that this requirement for SLUSA's applicability is met in the case before us.

i)    <u>*Chadbourne*</u>

The plaintiffs in *Chadbourne* had purchased certificates of deposit (CDs) issued by the Stanford International Bank ("SIB"), later revealed to be a cog in

the Ponzi scheme of one Allen Stanford. *Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1058, 1064 (2014). The CDs "were debt assets that promised a fixed rate of return," *id.* (internal quotation marks omitted), and were not "covered securities" under SLUSA, *see id.* at 1062. However, the complaint alleged that the plaintiffs had purchased the CDs in reliance on SIB's representations that it invested the proceeds of the CDs it issued in safe, stable securities of a sort that qualify as covered securities under SLUSA. SIB's representations were fraudulent. In fact, SIB and Stanford converted the proceeds of the sale of the CDs. When the fraud was exposed, the plaintiffs lost the value of their investment. The plaintiffs brought state law class action suits against affiliates of SIB, alleging that the defendants had defrauded the plaintiffs by their false representations as to the backing of the CDs plaintiffs purchased.

The Supreme Court ruled that SLUSA did not preclude the plaintiffs' suit. In so doing, the Court focused on SLUSA's requirement that the alleged misrepresentations be "in connection with" the purchase or sale of covered securities. The Court ruled that "[a] fraudulent misrepresentation or omission is

not made 'in connection with' such a 'purchase or sale of a covered security' unless it is material to a decision by one or more individuals (other than the fraudster) to buy or to sell a 'covered security.'" *Id.* at 1066. The Court relied in part on its precedents addressing the "in connection with" requirement in the antifraud provision of § 10(b). The Court observed that, in each of its precedents in which the "in connection with" requirement was satisfied, the case involved "victims [other than the fraudster] who took, who tried to take, who divested themselves of, who tried to divest themselves of, or who maintained *an ownership interest* in financial instruments that fall within the relevant statutory definition." *Id.* (emphasis in original).

Applying this rule, the Court concluded that the *Chadbourne* plaintiffs were not alleging fraud in connection with the purchase or sale of covered securities. The facts of the case included allegations of purchases of covered securities, at least to the extent that SIB represented that it purchased covered securities with the proceeds of the CDs it sold. But those simulated purchases of covered securities were by the fraudsters, not victims of the fraud. The plaintiffs

purchased only the CDs, which were not covered securities by the terms of

SLUSA. Thus, SLUSA did not preclude the plaintiffs' suit.

ii)      *In re Herald*

The facts of *Herald*, which interprets *Chadbourne*, are quite similar to the facts of our case. The plaintiffs in *Herald* purchased shares of common funds organized and operating outside the United States. *Herald I*, 730 F.3d at 115-16. The shares of those offshore funds purchased by the *Herald* plaintiffs are not "covered securities" within the meaning of SLUSA. *Id.* at 118. The managers and affiliates of those offshore funds advised the plaintiffs that the funds invested the proceeds of sales of its shares in S&P 100 securities. S&P 100 securities are "covered securities" within the terms of SLUSA. As with our case, the managers of the funds in *Herald* delegated authority to invest the funds' money to Madoff and BMIS, which purported to buy S&P 100 securities for the account of the funds and reported an impressive, consistent, but entirely fraudulent and nonexistent, stream of profits from the nonexistent investments. The complaints in *Herald*, directed against managers and affiliates of the funds, as well as banks

at which Madoff's accounts were held, accused the defendants of various forms of state law fraud relating to the success of Madoff's Ponzi scheme. *Id.* at 116-17; *see also In re Herald*, No. 09 Civ. 289(RMB), 2011 WL 5928952, at *1, 6 (S.D.N.Y. Nov. 29, 2011).

In its initial decision prior to the Supreme Court's *Chadbourne* ruling, the *Herald* panel dismissed the complaints on a number of grounds. Its SLUSA-based dismissal reasoned that the suit was barred by SLUSA because the complaint accused defendants of complicity in the fraud.

After the Supreme Court decided *Chadbourne*, the plaintiffs in *Herald* sought reconsideration. They argued that, as in *Chadbourne*, the securities purchased by the plaintiffs were not covered securities, and the only covered securities involved were those purportedly purchased by persons accused of complicity in the fraud. The *Herald* panel rejected the argument and denied reconsideration. *See Herald II,* 753 F.3d at 113. It ruled that dismissal of the case under SLUSA was in conformity with the Supreme Court's *Chadbourne* ruling because the plaintiffs, by buying uncovered shares in the offshore funds on the

34

understanding that the funds would invest the proceeds in S&P 100 stocks, were indirectly purchasing an interest in the covered S&P 100 securities. The court distinguished *Chadbourne* on the ground that the *Chadbourne* plaintiffs "were not seeking, directly or indirectly, to purchase covered securities." *Id.* at 113. By contrast, the *Herald* plaintiffs made "attempted investments in covered securities, albeit through feeder funds." *Id.*

Our plaintiffs, like the *Herald* plaintiffs, purchased the uncovered shares of the offshore Funds, expecting that the Funds were investing the proceeds in S&P 100 stocks, which are covered securities. We therefore rule that the essential element of SLUSA that requires falsity "in connection with" a purchase or sale of a covered security is satisfied in this case.

2. Precluded "Allegations" Under SLUSA

The district court concluded that because some allegations in the complaint involved material misstatements in connection with the purchase or sale of a covered security, the Complaint should be dismissed in its entirety. We cannot agree. Instead, as we explain below, SLUSA requires courts first to

inquire whether an allegation is of conduct by the defendant, or by a third party. Only conduct by the defendant is sufficient to preclude an otherwise covered class action. Second, SLUSA requires courts to inquire whether the allegation is necessary to or extraneous to liability under the state law claims. If the allegation is extraneous to the complaint's theory of liability, it cannot be the basis for SLUSA preclusion. The district court was required to conduct this analysis on a claim-by-claim basis.

For a number of Plaintiffs' claims, determining whether they fall within the scope of SLUSA's preclusion provisions requires determining the meaning of SLUSA's ambiguous use of the word "alleging," when it proscribes the "maint[enance]" of a covered class action "alleging . . . [false conduct] in connection with the purchase or sale of a covered security." This is a question of first impression in our Circuit, and in confronting it we consider the analyses of other courts.

The word, as used here, is susceptible to at least three interpretations. All three agree that the allegations must include conduct specified in SLUSA's

36

operative provisions, which reference the anti-falsity provisions of the 1933 or 1934 Acts. They disagree on who must be alleged to have committed the conduct and what relationship, if any, that conduct must have to the liability of the defendant under the state law claim asserted.

1. First, on the broadest of interpretations, "alleging" could mean that SLUSA applies to any claim that includes any reference whatsoever to the false conduct specified in SLUSA, even if the false conduct is completely irrelevant to the state law theory of the defendant's liability. Any factual assertion in a complaint can be considered an "allegation," regardless of whether the asserted fact pertains in any way to the defendant or has any role in establishing the defendant's liability. Complaints are drafted not only to comply with the legal requirements of setting forth an actionable claim, but also at times for public relations purposes. They may include assertions intended for the eyes of the press, rather than of the court, as well as assertions unrelated to the legal theory of the complaint, intended to bias the court or jury against

the adversary. They may therefore include assertions of fact that are completely irrelevant to the asserted basis of the defendant's liability.[18] Thus, under this broadest interpretation of "alleging," the statement in the complaint that the defendant, or some other person, had previously been convicted of securities fraud would be an "allegation" that would bring the complaint within SLUSA's prohibition even though the allegation was unrelated to the asserted theory of liability and was included solely for public relations purposes.

2. A second, somewhat narrower understanding of SLUSA's use of "alleging" is that, while not including extraneous pleaded facts (that is, facts asserted in the complaint but irrelevant to establishing the defendant's liability), it encompasses any assertion of the types of false conduct specified in SLUSA's references to the anti-falsity provisions of

---

[18] *See LaSala v. Bordier et Cie*, 519 F.3d 121, 141 (3rd Cir. 2008) ("[C]omplaints are often filled with [extraneous detail]. . . . [T]he inclusion of such extraneous allegations does not operate to require that the complaint must be dismissed under SLUSA.").

the 1933 and 1934 Acts that must be proved in order for the state law claim to succeed — even when the *defendant* is not alleged to have participated in the falsity. On this understanding of "alleging," SLUSA would preclude state law claims that in no way suggest that the defendant engaged in the conduct specified in SLUSA. It would preclude claims against the defendant that were altogether outside the scope of the anti-falsity provisions of the 1933 and 1934 Acts, and of the PSLRA, and perhaps in some instances beyond the constitutional power of Congress to regulate.

3. A third and still narrower possible meaning of "alleging" is that the complaint must allege conduct by the defendant that is specified in SLUSA *and* that forms the basis for the defendant's state law liability.

Two Circuits, the Third and the Sixth, have confronted and discussed the ambiguity in SLUSA's use of "alleging." The Third Circuit first addressed the issue in *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294 (3rd Cir. 2005). There, the plaintiff class consisted of brokerage clients of the defendant. The defendant

provided services to both retail brokerage customers and investment banking clients. *Id.* at 296. The state law complaint alleged that, because the defendant's investment banking business was the more remunerative, the defendant breached its *contractual* obligation to provide unbiased advice to its brokerage clients and instead provided misleading investment research that was designed to benefit the defendant's investment banking clients at the expense of its brokerage customers. In opposition to the defendant's motion to dismiss based on SLUSA, the plaintiffs argued that misrepresentation was not essential to their claim for breach of contract, and that their breach of contract claim was therefore not within the coverage of SLUSA. *Id.* at 300. The court rejected the argument, explaining that the applicability of SLUSA "does not turn on whether allegations are characterized as facts or as essential legal elements of a claim, but rather on whether the SLUSA prerequisites are 'alleged' in one form or another." *Id.* This formulation of the standard might seem to adopt the first and broadest of the three alternative understandings of "alleging" set forth above, applying SLUSA to any otherwise qualifying complaint that includes any mention of SLUSA's

specified types of false conduct, regardless of whether the false conduct alleged had any relevance to the success of the state law claim. The court, however, made clear elsewhere in the opinion that it was not adopting such an extreme position. What the court was saying was that the SLUSA test of "alleging" was satisfied regardless of whether the falsity alleged was an essential *legal element* of the state law claim, or was merely a fact essential to establish the claim. The court summarized, "where, as here, allegations of a *material* misrepresentation serve as the factual *predicate* of a state law claim, the misrepresentation prong is satisfied under SLUSA." *Id.* (emphases added).

A subsequent Third Circuit opinion that summarized the holding of *Rowinski* explained:

> It is important to recognize that *Rowinski* did not hold that any time a misrepresentation is alleged, the misrepresentation-in-connection-with-a-securities-trade ingredient is present. . . . Rather, the point we made in *Rowinski* was that when an allegation of misrepresentation in connection with a securities trade, implicit or explicit, operates as a factual predicate to a legal claim, that ingredient is met. To be a factual predicate, the fact of a misrepresentation must be one that gives rise to liability, not merely an extraneous

> detail. This distinction is important because complaints
> are often filled with more information than is necessary.

*LaSala v. Bordier et Cie*, 519 F.3d 121, 141 (3rd Cir. 2008).

The Third Circuit accordingly made clear that it rejects the first possible

meaning of "alleging," which would make SLUSA apply to an otherwise

qualifying complaint that includes an allegation of specified false conduct,

regardless of whether the allegation of falsity was essential to the success of the

state law claim. What is less clear is whether the Third Circuit would have opted

for our second or the third alternative understandings of "alleging" if the facts

had required making that choice. The court was not confronted with the

question, because the claim in *Rowinski* was to the effect that the *defendant had*

*deceived* its brokerage customers (the plaintiffs) in connection with transactions in

covered securities. Stripped of its anti-SLUSA camouflage, which disguised the

false conduct as breaches of contract, the complaint alleged a theory of liability

based on conduct *by the defendant* prohibited by the terms of § 10(b) that are

quoted in SLUSA (claims which would be subject to the PSLRA if pleaded under

federal law). Therefore, regardless of whether the court was employing the

42

second or third possible interpretation of "alleging," SLUSA reached the *Rowinski* plaintiffs' breach of contract claim.

The Sixth Circuit also confronted the ambiguity of SLUSA's use of "alleging." In *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305 (6th Cir. 2009), the plaintiff class consisted of beneficiaries of trusts administered by the defendant bank. The state law claims against the bank included that, in order to obtain higher fees, it breached contractual and fiduciary duties by investing assets it held for the plaintiffs' benefit in its own proprietary funds instead of superior, lower-fee funds administered by other institutions. *Segal*, 581 F.3d at 308. Plaintiffs opposed the SLUSA-based dismissal on the grounds that "the state law claims do not depend upon allegations of misrepresentation or manipulation — and thus [any such allegations] are not material to them." *Id.* at 311. The court rejected the argument, stating: "But that . . . is not how SLUSA works. The Act does not ask whether the complaint makes 'material' or 'dependent' allegations of misrepresentation in connection with buying or selling securities. It asks whether the complaint includes these types of allegations, pure and simple." *Id.*

43

Once again, this formulation, taken at face value, could be understood to mean that any allegation of false conduct by any person of the sort specified in SLUSA brings the claim within SLUSA's bar, even if the allegation of falsity is superfluous and irrelevant to the success of the claim.

But, as in *Rowinski*, other portions of the opinion push against that interpretation. The plaintiffs had argued against application of SLUSA by pointing out that the complaint included a disclaimer that "[n]one of the causes of action stated herein are based upon any misrepresentation or failure to disclose material facts to plaintiff." *Id.* at 310 (internal quotation marks omitted). The court rejected the significance of such a disclaimer. It explained that the reviewing court "must look to . . . the substance of a complaint's allegations in applying SLUSA." *Id.* "The question under SLUSA is not whether the complaint uses the prohibited words: 'an untrue statement or omission of a material fact' or a 'manipulative or deceptive device or contrivance.' It is whether the complaint covers the prohibited theories, no matter what words are used (or disclaimed) in explaining them. . . . Although [plaintiffs] disclaim[] any allegation of

44

'misrepresentation or failure to disclose material facts,' the remainder of the amended complaint shows otherwise." *Id.* at 311 (citation omitted). Indeed, the plaintiffs characterized as the "gravamen of [the] complaint . . . that the defendants did not deal honestly" with the plaintiffs, and the complaint contained "allegations of fraud, manipulation, and scheme." *Id.* (internal quotation marks omitted). Thus, the plaintiffs' pleaded theory of liability in fact relied on defendants' fraudulent conduct in connection with transactions in covered securities, notwithstanding the complaint's inaccurate (and therefore futile) assertion to the contrary. *Id.* at 312. Plaintiffs therefore could not by artful pleading—by denying that the claims depended on fraudulent conduct when in fact they did depend on fraudulent conduct—take the complaint outside of the prohibition of SLUSA.

Once again, as in *Rowinski*, the false conduct alleged, upon which the success of the claims depended, was conduct of the defendant. The proofs necessary to plaintiffs' state law claims would have shown conduct *of the defendant* falling within SLUSA's operative provisions that reference the

45

anti-falsity provisions of the securities acts. Accordingly, SLUSA's preclusion would have applied regardless of whether the court espoused our second or third interpretation of SLUSA's use of "alleging."

To the extent the Third and Sixth Circuit decisions may be read to mean that SLUSA's ambiguous term "alleging" should be deemed satisfied whenever a complaint includes allegations of false conduct (of the sort specified in SLUSA) that is essential to the success of the state law claim, even if that false conduct is alleged to have been done by third persons without the defendant's complicity, we respectfully disagree.

In our view, the history and the purposes of this provision all favor interpreting it to apply to state law claims predicated on conduct *by the defendant* that is specified in SLUSA's operative provisions referencing the anti-falsity proscriptions of the 1933 and 1934 Acts. Such allegations would be subject to the PSLRA if pleaded as a private securities claim (regardless of whether such a private claim could succeed). Couching them as state law claims would escape the PSLRA's limitations. Interpreting SLUSA to apply more broadly to state law

claims that are altogether outside the prohibitions of the federal securities laws, and could not be subject to the PSLRA, would, as illustrated below, construe ambiguous provisions of SLUSA in a highly improbable manner — as prohibiting state law claims involving matters that were not Congress's concern in passing SLUSA, that have never been a subject of congressional concern, and that in a number of instances might even lie outside the powers of Congress.

Reviewing briefly SLUSA's history, as discussed above, Congress passed the anti-falsity provisions of the 1933 and 1934 Acts to protect the United States securities markets and the investing public against securities frauds and deceptions. Some sixty years later, finding that baseless class-action claims in suits under these Acts were damaging the United States economy, Congress passed the PSLRA, imposing restrictions on such claims. Then, finding that plaintiffs were escaping the limitations of the PSLRA, which applied only to claims brought under the 1933 and 1934 Acts, by framing their class-action claims as violations of state law so that the PSLRA would not apply, Congress passed SLUSA for the purpose of closing that loophole. If ambiguous provisions

of SLUSA are construed to make its prohibition apply whenever a falsity in connection with a transaction in a covered security is a necessary predicate of the plaintiffs' claim, even where the falsity is not chargeable to the defendant and the claim could not have been brought against the defendant under the federal securities laws (and could therefore not be subject to the PSLRA), SLUSA would bar state law claims in a manner unrelated to SLUSA's purposes. (We consider below examples illustrating this result.) The history and purpose of SLUSA thus give strong support to the proposition that its ambiguous language should be interpreted so that it applies to state law claims predicated on conduct *by the defendant* specified in SLUSA's operative provisions, which reference the anti-falsity provisions of the 1933 and 1934 Acts.

Congress's choice of words in designing the provisions of SLUSA further confirms an intention that SLUSA apply to state law claims that are predicated on conduct of *the defendant* specified in SLUSA. As outlined above, Congress designed SLUSA's operative provisions in two sections, one expressly amending the 1933 Act, and one expressly amending the 1934 Act. The SLUSA provision

amending the 1933 Act adopts terminology taken from the 1933 Act's anti-falsity provisions, and the provision amending the 1934 Act adopts the terminology of the anti-falsity provisions of the 1934 Act. Congress's choice of words in this regard seems intended to apply, in the 1933 Act provision, to state law claims alleging conduct by the defendant that would be actionable under the anti-falsity provisions of the 1933 Act, and in the 1934 Act provisions, to apply to state law claims alleging conduct by the defendant that would be actionable under the anti-falsity provisions of the 1934 Act. When this language was used in the original acts to define prohibited conduct, it necessarily referred to conduct *of the defendant* in relation to litigation to enforce the prohibitions. The most logical inference to be drawn from SLUSA's quotations and paraphrases of that prohibitory language in the context of civil litigation asserting liability premised on violation of those terms is that, like the original usage, the language refers to the conduct of the defendant accused in the suit.

Furthermore, the most natural reading of the ambiguous term "alleging," when used in the context of describing a legal complaint is as signifying what the

defendant is accused of.[19] If, for example, we are told that X has been charged with "allegations of fraud," or that X is named as a defendant in a suit "alleging fraud," we understand this to mean that X is accused of having committed fraud, and not that he is charged with negligence or breach of contract in failing to detect someone else's fraud, much less that he is charged with a contractual responsibility for the debts of a third person who committed a fraud. When Federal Rule of Civil Procedure 9(b) states that, "[i]n *alleging* fraud . . . a party must state with particularity the circumstances constituting fraud . . . ," we understand this to apply to complaints accusing *the defendant* of fraud. Fed. R. Civ. P. 9(b) (emphasis added). Thus, the most natural understanding of the formulation — which targets state law claims alleging conduct that is prohibited by federal law provisions — is that it targets state law claims predicated on conduct by the defendant that violates the referenced federal law provisions.

---

[19] *See* Bryan A. Garner, Garner's Dictionary of Legal Usage 44 (3d ed. 2011). While acknowledging that the word "allege" can be used to denote any formal assertion of a fact, Garner adds, "Allege should not be used as a synonym of assert, maintain, declare, or claim. Allege has peculiarly accusatory connotations." *Id.*

Finally, construing "alleging" as applying where the false conduct alleged (in connection with a transaction in a covered security) is essential to the success of the state law claim, but is not conduct of the defendant, would result in barring numerous suits that were altogether outside of Congress's purposes in passing SLUSA[20] and which, in various circumstances, might even lie outside of Congress's constitutional power to regulate. We set forth three (of numerous possible) illustrative examples.

- As a first example, assume the plaintiffs, who are clients of a stockbroker, engaged an auditor to audit their accounts. The auditor examines the accounts of the plaintiffs' securities transactions, does so negligently, and finds everything in order. Later it emerges that the broker had committed frauds against the plaintiffs and that the auditor's negligent examination failed to uncover the frauds. The plaintiffs sue the auditor in a state-law

---

[20] *See* H.R. Rep. No. 105-640, p. 10 (1998) (noting that SLUSA "is designed to protect the interests of shareholders and employees of public companies that are the target of meritless 'strike' suits," and finding that the "solution" to the problem of "plaintiff's lawyers . . . circumvent[ing] the [PSLRA]" is "to make Federal court the exclusive venue for securities fraud class action litigation.").

51

class action, alleging negligence in failing to detect the stockbroker's frauds. It is true that the negligence claim includes an allegation of fraud in connection with transactions in covered securities and that the alleged fraud by the broker is an essential predicate of the plaintiffs' claims against the defendant auditor. However, the auditor is not alleged to have committed any of the conduct specified in SLUSA. The plaintiffs' claim, if brought in federal court under diversity or supplemental jurisdiction, would not be subject to the restrictions of the PSLRA because it would not charge the defendant with a violation of the securities acts. Such a suit appears to us to be outside the concerns of the federal securities laws, the PSLRA, and SLUSA.

- As a second example, assume the plaintiffs are the beneficiaries of insurance policies that protect them from losses in their investment portfolios attributable to fraud in connection with transactions in covered securities. After the plaintiffs are victimized by such a fraud, the plaintiffs bring a class action against the insurer, seeking payment on their policies.

As in the stockbroker fraud example above, the complaint alleges fraud in connection with a transaction in a covered security that is an essential predicate of the plaintiffs' claims. However, the fraud is not that of the defendant insurer. The insurer is not being charged with securities fraud. The facts alleged would not show the insurer to have violated the referenced anti-falsity provisions of the 1933 and 1934 Acts. The plaintiffs' state law claims are not an evasion of the PSLRA and appear to us to be outside the scope of SLUSA.

- As a third example, the defendant was a firm engaged by the plaintiffs to maintain custody of the plaintiffs' property. The defendant firm engaged X as a contractor to perform services related to the custody. The defendant firm negligently failed to check into X's background before engaging him. Such an inspection would have revealed that X had been convicted of securities fraud under § 10(b). In the performance of his duties, X steals the plaintiffs' property. The plaintiffs file a class action against the defendant, alleging negligence in hiring X without checking his background. As in the

previous two examples, the plaintiffs' claims include an allegation of fraud in violation of the federal securities laws (X's previous conviction for securities fraud which the defendant negligently failed to discover). X's prior securities fraud conviction is necessary to the success of the plaintiffs' state law claim, but that fraud is not attributable to the defendant custodian and could not provide a basis for a claim against the defendant under the anti-falsity provisions of the 1933 and 1934 Acts. The plaintiffs' state law claims are not an evasion of the PSLRA and are outside the concerns of the federal securities laws. They are also potentially beyond Congress's limited power under Article One, Section Eight of the Constitution. Congress has no authority to regulate local maintenance of custody of property (unless interstate commerce is involved). Construing SLUSA as applying whenever a securities fraud is an essential predicate of the plaintiffs' claim would interpret SLUSA as barring suits over which Congress has no lawful authority.

In our view, given SLUSA's history, purposes, and text, no reasonable justification can be found for construing SLUSA as barring state-law claims that do not depend on conduct *by the defendant* falling within SLUSA's specifications of conduct prohibited by the anti-falsity provisions of the 1933 and 1934 Acts. For the reasons discussed above, we conclude (with a limitation explained below) that SLUSA's preclusion applies when the state law claim is predicated on conduct *of the defendant* specified in SLUSA's operative provisions, which reference the anti-falsity provisions of the 1933 and 1934 Acts.

In stating this standard, we note two caveats and a limitation. First, the caveats. The first is that plaintiffs do not evade SLUSA by camouflaging allegations that satisfy this standard in the guise of allegations that do not. When the success of a class action claim depends on a showing that the defendant committed false conduct conforming to SLUSA's specifications, the claim will be subject to SLUSA, notwithstanding that the claim asserts liability on the part of the defendant under a state law theory that does not include false conduct *as an essential element* — such as breach of a contractual right to fair dealing. As our

court stated in *Herald* and the Sixth Circuit similarly made clear in *Segal*, if the success of a claim depends on conduct specified in SLUSA, and the defendant was complicit in that conduct, the claim is covered by SLUSA even though plaintiffs have artfully avoided using SLUSA's terms. *Herald I*, 730 F.3d at 119; *Segal*, 581 F.3d at 311.

Second, while SLUSA applies only to allegations of conduct by the defendant that would violate the anti-falsity provisions of the 1933 and 1934 Acts that are referenced in SLUSA's operative provisions, SLUSA may apply even though there is no private claim (as opposed to an enforcement action by the SEC) for that violation under the 1933 and 1934 Acts. As noted above, the Supreme Court ruled in *Dabit* that SLUSA precludes class-action claims brought by persons induced by a defendant's frauds to *hold* securities, even though the Supreme Court had ruled in *Blue Chips Stamps* that only buyers and sellers (and not holders) were authorized by § 10(b) to sue privately. The language of SLUSA requires an allegation of conduct prohibited by the anti-falsity provisions of the 1933 and 1934 Acts that are referenced in SLUSA. It does not require an

allegation of conduct for which the 1933 and 1934 Acts *authorize a private right of action*. One might argue that interpreting SLUSA in this fashion takes the statute beyond its purpose to prevent evasions of the PSLRA by private plaintiffs. If this is so, it is a consequence of SLUSA's unambiguous language. Some of SLUSA's provisions explicitly specify preclusion of claims that are not enforceable in a private action. For example, the SLUSA provision amending the 1933 Act uses language similar to that of § 17(a)(2), for which there is no private right of action. *See Finkel v. Stratton Corp.*, 962 F.2d 169, 175 (2d Cir. 1992). Statutes are not always perfectly tailored to accomplish their goals and nothing more. Moreover, this consequence did not dissuade the Supreme Court from its ruling in *Dabit* that private class-action claims alleging conduct specified in SLUSA are precluded even though no private action would lie for such violation of the securities laws.

Finally, we think there is a necessary limitation on our stated standard that SLUSA's preclusion provisions apply only when the allegations of the class action claim charge *the defendant* with liability based on the conduct specified in

SLUSA, referencing the 1933 and 1934 Acts. State law fraud prohibitions, unlike the anti-falsity provisions of the 1933 and 1934 Acts, are not defined in a manner that refers explicitly to securities transactions, much less to transactions in "covered" securities. A state law claim basing the defendant's liability on conduct that would violate the anti-falsity provisions of the 1933 and 1934 Acts would have no need to allege that the fraud was in connection with securities that were listed on a national exchange or issued by registered investment companies (and might even dispense with the allegation that the fraud was in connection with a transaction in a security). Because SLUSA's applicability seems to turn on what is "alleg[ed]," 15 U.S.C. §§ 77p(b), 78bb(f)(1), SLUSA could be read not to apply if there is no allegation that the relevant security was listed on a national exchange, or otherwise "covered." If SLUSA is construed in this fashion, it will hardly ever apply, as plaintiffs pleading state law claims will hardly ever plead the status-based elements of the federal anti-falsity provisions that have no role in establishing liability under their state law claims. We believe it was the intention of Congress that, where a state law class-action claim charges

the defendant with liability based on conduct violative of the anti-falsity provisions of the 1933 and 1934 Acts as referenced in SLUSA but does not allege the supplemental status-based elements specified in SLUSA, such as the "covered" status of the relevant security, the court may nonetheless ascertain those facts independently of the plaintiffs' allegations and apply SLUSA when those facts are present.

C.    Application of SLUSA to Plaintiffs' Claims

Having determined the standard we believe is appropriate to ascertain the scope of SLUSA's prohibitions, we now return to the allegations of the Complaint. In reviewing Plaintiffs' claims, the district court observed that "[a]ny claim may trigger SLUSA [application] if the basis of that claim sounds in fraud or relies on alleged misstatements or omissions." *In re Kingate*, 2011 WL 1362106, at *6. The district court then "reviewed Plaintiffs' claims individually and [found] that each sounds in fraud or alleges misrepresentations, material omissions, or the use of a deceptive device." *Id.* at *7. The district court did not, however, determine whether the state law claims depended on conduct specified

in SLUSA, *committed by Defendants*. We therefore conclude that the standard employed by the district court was not the correct standard. We consequently vacate the district court's judgment dismissing Plaintiffs' claims.

The allegations described in Group 1, as noted above, predicate liability on charges that Defendants fraudulently made misrepresentations and misleading omissions regarding the Funds' investments with Madoff and their oversight of the Funds' investments. Under *Herald*, these claims allege falsity "in connection with" covered securities. Additionally, they allege conduct by Defendants falling within SLUSA's specifications of conduct prohibited by the anti-falsity provisions of the 1933 and 1934 Acts. Accordingly, SLUSA precludes Plaintiffs' Group 1 allegations.

The allegations in Group 2 premise liability on Defendants' negligent misrepresentations and misleading omissions in connection with the Funds' investments with Madoff and with oversight of Madoff's operations. These allegations differ from those in Group 1 in that they charge the Defendants with negligent misrepresentations (i.e., without scienter) rather than fraudulent

misrepresentations. While scienter is essential to a claim under § 10(b), *Ernst &*

*Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976), scienter is not essential to claims

brought by the SEC under § 17(a)(2) and (3) of the 1933 Act. *See Aaron*, 446 U.S. at

702.[21] Because SLUSA specified conduct prohibited by not only the anti-fraud

provisions of the 1934 Act, but also § 17(a)(2) of the 1933 Act, we see no reason

why the absence of scienter should prevent SLUSA from barring the Group 2

allegations. On remand, the district court should therefore dismiss any

allegations of the type defined as Group 2.

The allegations described in Group 3 charge that Defendants aided and

abetted (rather than directly committed) the frauds described in Group 1.[22]

---

[21] Subsequent to the Supreme Court's decision in *Aaron*, this Circuit ruled that no private right of action exists under § 17(a). That, however, appears irrelevant to the applicability of SLUSA to claims that allege the conduct proscribed by § 17(a). As the Supreme Court ruled in *Dabit*, SLUSA's prohibitions may apply even where the plaintiff could not have brought a private suit under the federal securities laws.

[22] The Supreme Court in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994), ordered the dismissal of a private suit alleging liability under § 10(b) for aiding and abetting another's violation. The Supreme Court used language that seems to imply that the terms of § 10(b) do

61

*Herald* ruled that such allegations are precluded by SLUSA. *Herald I*, 730 F.3d at 117, 119-20.

Next we turn to the allegations described in Group 4. These predicate liability on Defendants' breach of contractual, fiduciary, and/or tort-based duties to Plaintiffs to provide competent management, consulting, auditing, or administrative services to the Funds, thus allowing Madoff's frauds to go undetected, causing Plaintiffs' losses. Defendants argue in support of SLUSA dismissal that the claims include all of the essential elements for SLUSA to apply. They are "class action[s] based upon the . . . common law of [a] state," and they allege "a misrepresentation" or "an untrue statement" "of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. §§ 77p(b), 78bb(f)(1). However, as defined above, allegations within Group 4 do not include those requiring a showing of false conduct *by the named Defendants* of the sort

---

not sustain liability for aiding and abetting, regardless of whether asserted in a private suit or an SEC enforcement action. Thereafter, as part of the PSLRA, Congress specifically authorized the SEC to bring civil actions against aiders and abettors of violations of the 1934 Act. 15 U.S.C. § 78t(e); *see Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 157-58 (2008).

specified in SLUSA. The only false conduct involved in the Group 4 allegations is that of Madoff and BMIS. Under the Group 4 theories of liability, Defendants, like Plaintiffs, were victims of Madoff's frauds. The asserted liability of Defendants under these claims arises from the fact that Defendants breached their contractual and duty-based obligations to Plaintiffs. Proof of these claims would not require any showing of false conduct on the part of Defendants. We therefore conclude that such allegations are not precluded by SLUSA.[23]

The allegations described in Group 5 similarly do not require a showing of false conduct on the part of Defendants. Such allegations assert that Plaintiffs are entitled to compensation for fees paid by the Funds to certain Defendants pursuant to contracts between the Funds and those Defendants because those Defendants failed to perform the duties for which the fees were paid, and because the fees based on purported profits and values of the Funds were

---

[23] The Group 4 allegations differ crucially from those found in *Herald* to be precluded by SLUSA. *Herald I*, 730 F.3d at 119 n.7. The *Herald* claims asserted liability based on defendants' alleged complicity in Madoff's fraudulent scheme. *See id*. Only Groups 1, 2, and 3 allege Defendants to have been, in varying degrees, complicit in the falsity.

computed on the basis of inaccurate values. The asserted basis for Defendants' liability is not deceptive conduct by Defendants (or indeed by anyone). The allegations are based on payment of fees to Defendants which, as to some of the claims, were not earned and, as to others, were not correctly calculated. We see no basis for applying SLUSA to these claims as they do not depend on conduct by Defendants within SLUSA's specifications.[24]

We leave it to the district court to determine, on full briefing, which allegations of the Complaint fall into which of the categories we have described (recognizing that the numbered counts of the Complaint in some cases include multiple allegations and that all the allegations of a single "count" are not necessarily of the same type or group). On remand, the district court may well conclude, pursuant to the standard prescribed by this opinion, that certain of Plaintiffs' claims are precluded by SLUSA and others are not. When a complaint

---

[24] We are not asked to decide at this stage, and therefore do not decide, whether the Group 5 claims in fact belong to the Funds (which made the complained-of fee payments to Defendants) and could be brought by Plaintiffs only derivatively on behalf of the Funds, if at all, and not directly as shareholders.

contains both claims precluded by SLUSA and claims not precluded by SLUSA, the question arises whether the entire action should be dismissed, or whether the claims that are not within SLUSA's scope should be allowed to proceed.

Some courts have suggested that the proper course of action is dismissal of the entire complaint. *See, e.g., Atkinson*, 658 F.3d at 555 ("[O]ur circuit has not yet addressed whether SLUSA precludes an entire action, as opposed to specific claims, if the complaint contains any covered allegations. SLUSA's plain language, along with our precedent, suggests that it does." (citation omitted)); *Rowinski*, 398 F.3d at 305 ("[W]e question whether preemption of certain counts and remand of others is consistent with the plain meaning of SLUSA. The statute does not preempt particular 'claims' or 'counts' but rather preempts 'actions,' suggesting that if any claims alleged in a covered class action are preempted, the entire action must be dismissed." (citations omitted)).

We respectfully disagree with the proposition that SLUSA's language suggests a need to dismiss the entire action merely because one of its claims is precluded. Our court and other circuits have ruled that only the claims covered

by SLUSA's terms should be dismissed, and the claims not within SLUSA's terms should proceed. *See Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25, 47 (2d Cir. 2005) (vacating the district court's dismissal of a claim not within SLUSA's terms), *rev'd on other grounds by Dabit*, 547 U.S. 71; *see also Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1223 (9th Cir. 2009); *In re Lord Abbett Mutual Funds Fee Litig.*, 553 F.3d 248, 255 (3rd Cir. 2009).

Apart from the fact that we are bound by our court's prior ruling, we think it is clearly correct. SLUSA does not say that a class action containing a claim that falls within the statute's terms "must be dismissed." It asserts the very different command — that no covered class action based on the law of any state and including the necessary allegations "*may be maintained* in any State or Federal court by any private party." 15 U.S.C. §§ 77p(b), 78bb(f)(1) (emphasis added). If the court dismisses the claims that come within SLUSA's terms and allows the other claims to proceed, the court has in no way failed to respect SLUSA's command. Following dismissal of the precluded claims, the surviving action

which is "maintained" does not include allegations precluded by SLUSA. *See*

*Proctor*, 584 F.3d at 1227.

Not only does allowing the claims not covered by SLUSA's terms to proceed better comport with the words of the statute, but it would make little sense to construe the statute as requiring dismissal of claims that have nothing to do with SLUSA's concerns. Where a state's joinder rules allow various claims to be joined together in a single action in the state court, the claims not within SLUSA's terms may have nothing to do with securities regulations or any other concern within the constitutional powers of Congress. They may involve pure matters of state contract, tort, or statutory law, lying outside of Congress's powers, and asserted in state court to boot. We can see no reason to stretch and distort the statutory language of SLUSA so as to construe it to command the dismissal of claims that are not of the type it describes.[25]

---

[25] Moreover, plaintiffs' incorporation of a precluded claim into other claims does not necessarily render the other claims precluded. Plaintiffs often, including in the present case, restate and reallege all preceding allegations in each claim. Some courts have suggested that even if SLUSA preclusion is decided on a claim

Accordingly, should the district court determine that some of Plaintiffs' claims (or portions thereof) fall within the terms of SLUSA's preclusion and others do not, we direct the district court to dismiss the precluded claims and proceed with respect to the other claims.[26]

---

by claim basis, such pleading in a complaint that contains any precluded allegations renders all claims precluded. *See, e.g., Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1287 n.6 (10th Cir. 2008) ("In the instant case, however, Plaintiffs have incorporated their general allegations into each of their substantive counts . . . so SLUSA precludes all of Plaintiffs' claims individually."); *Rowinski*, 398 F.3d at 305 ("[W]e need not decide whether a count-by-count analysis is appropriate in this case, because plaintiff has incorporated every allegation into every count in his complaint. Our SLUSA analysis therefore applies to each of plaintiff's counts, and compels the conclusion that each is preempted."). However, because, under the standard we set forth above, SLUSA's application to a claim turns on the claim's theory of the defendant's liability, the inclusion of allegations in a claim that are irrelevant to the claim's theory of the defendant's liability are irrelevant to SLUSA's application to the claim.

[26] Defendants raised a number of alternate grounds for dismissal of Plaintiffs' claims that we do not here address. These issues remain open on remand. Additionally, in denying Plaintiffs leave to replead, the district court ruled that all of Plaintiffs' non-fraud claims would, if not precluded by SLUSA, nonetheless be preempted by New York's Martin Act. The New York Court of Appeals has since ruled that the Martin Act preempts common law causes of action only if the action is "predicated solely on a violation of the Martin Act or its implementing regulations and would not exist but for the statute." *Assured Guar. (UK) Ltd. v.*

## IV.   CONCLUSION

The judgment of the district court is VACATED, and the matter REMANDED for further proceedings. In the interest of judicial economy, any appeals from the district court's rulings on the application of SLUSA to Plaintiffs' claims shall be heard by this panel.

---

*J.P. Morgan Inv. Mgmt. Inc.*, 939 N.Y.S.2d 274**,** 279 (2011). In light of this ruling, the parties agree that Plaintiffs' claims are not preempted by the Martin Act.