*Rayner v. E\*TRADE Financial Corp.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term 2017

(Argued: December 7, 2017          Decided: July 31, 2018)

No. 17-1487

————————————————————

TY RAYNER, on Behalf of Himself and All Others Similarly Situated,

*Plaintiff-Appellant,*

-v.-

E\*TRADE FINANCIAL CORPORATION, E\*TRADE SECURITIES LLC,

*Defendants-Appellees.*

————————————————————

Before:   CABRANES, LIVINGSTON, *Circuit Judges*, AND GOLDBERG, *Judge.*\*

Plaintiff-Appellant Ty Rayner ("Rayner"), on behalf of himself and all others similarly situated, appeals from an April 4, 2017 judgment of the United States District Court for the Southern District of New York (Koeltl, *J.*), which granted a motion to dismiss filed by Defendants-Appellees E\*TRADE Financial Corporation and E\*TRADE Securities LLC (collectively, "E\*TRADE").   Rayner argues on appeal that the district court erred in determining that his state law claims,

---

\* Judge Richard W. Goldberg, of the United States Court of International Trade, sitting by designation.

alleging that E*TRADE violated its duty of best execution, are precluded by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb(f). For the reasons set forth below, we conclude that Rayner's arguments lack merit. Accordingly, we AFFIRM the judgment of the district court.

FOR PLAINTIFF-APPELLANT:　　　　LESLIE E. HURST (Timothy G. Blood, Paula R. Brown, *on the brief*), Blood Hurst & O'Reardon, LLP, San Diego, CA.

Brian J. Robbins, Kevin A. Seely, Ashley R. Rifkin, Leonid Kandinov, Robbins Arroyo LLP, San Diego, CA.

FOR DEFENDANTS–APPELLEES:　　　　COREY WORCESTER (Faith E. Gay, Marc L. Greenwald, *on the brief*), Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY.

DEBRA ANN LIVINGSTON, *Circuit Judge*:

Plaintiff-Appellant Ty Rayner ("Rayner") filed a class action complaint (the "Complaint") raising state law claims against Defendants-Appellees E*TRADE Financial Corporation and E*TRADE Securities LLC (collectively, "E*TRADE"). Rayner's claims for breach of fiduciary duty, unjust enrichment, and declaratory relief were each based on the same allegation that E*TRADE violated its duty of best execution.

The United States District Court for the Southern District of New York (Koeltl, *J.*) dismissed all of Rayner's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Rayner v. E*TRADE Fin. Corp.*, 248 F. Supp. 3d 497

(S.D.N.Y. 2017).   For the reasons set forth below, we conclude that the district court properly dismissed Rayner's claims because they are precluded by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb(f).   Accordingly, we affirm the judgment of the district court.

## BACKGROUND[1]

E*TRADE provides brokerage and related services to individual retail investors.   Clients place orders to buy and sell securities with E*TRADE, and then E*TRADE executes those orders by delivering them to trading venues such as stock exchanges, hedge funds, banks, electronic communications networks, and third-party market makers.   One such client, Rayner, placed a non-directed, standing limit order as recently as January 2014, and E*TRADE executed that order on his behalf.   A "limit order" is "an order to buy or sell a stock at a specified price . . . or better."   J.A. 9 n.1.   Rayner's order remained "standing" until E*TRADE executed the order by (1) placing the order with a trading venue; and (2) the trading venue actually purchased or sold the security.   Because the order was "non-directed," E*TRADE retained discretion to choose the trading venue for

---

[1] The facts presented here are drawn from the allegations in Rayner's Complaint, which we accept as true for purposes of reviewing a motion to dismiss.   *See Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 97 n.1 (2d Cir. 2015).

3

executing Rayner's order.    But E*TRADE's discretion to choose trading venues is guided by its duty of best execution.    And indeed, E*TRADE promises clients that it will "do everything possible to seek best execution each and every time [a client] trade[s]" in order to "find the right blend of execution price, speed, and price improvement."    *Id.* at 13 (quoting E*TRADE's website).

On March 25, 2015, Rayner filed the Complaint on behalf of himself and other E*TRADE clients who have placed non-directed, standing limit orders. Specifically, Rayner complains that, in breach of its duty of best execution, E*TRADE prioritizes choosing the trading venues that are willing to pay the largest "kickbacks" in exchange for order flow.[2]    Such a practice creates a "conflict of interest between [E*TRADE] and [its] clients . . . by incentivizing [E*TRADE to choose trading venues] that may be most cost-effective for [E*TRADE], but which may not be the best method of execution for [its] clients." *Id.* at 12 (quoting "[m]arket experts [that] acknowledge that the maker-taker system sets up financial incentives that can cause brokers to act to the detriment of their retail investor clients").    E*TRADE's clients are harmed when limit orders

---

[2] Under the "maker-taker" system, a trading venue will pay E*TRADE a rebate whenever E*TRADE executes an order with that trading venue.    Rayner refers to these rebates as "kickbacks."    *Id.* at 11–12.

4

are routed to trading venues that pay higher kickbacks because, according to Rayner, such orders are "up to 25% less likely to be executed," and more likely to "trade when the market price is becoming worse." *Id.* at 19. Instead of ensuring that its clients can purchase and sell securities at the optimal price and volume, E*TRADE allegedly violates its duty of best execution by seeking to maximize its own revenue from "kickbacks."

E*TRADE filed a motion to dismiss, arguing *inter alia* that Rayner's class action suit is precluded by SLUSA. In response, Rayner argued that SLUSA preclusion does not apply because (1) his Complaint does not allege that E*TRADE made a misrepresentation or omission, or employed any manipulative or deceptive device; and (2) even assuming that the Complaint alleges fraud, any such fraud was not "in connection with" the purchase or sale of covered securities. In a memorandum opinion and order dated April 1, 2017, the district court granted E*TRADE's motion to dismiss, concluding that "[Rayner's] arguments against preclusion are unpersuasive." *Rayner*, 248 F. Supp. 3d at 502.

## DISCUSSION

### I. Standard of Review

"We review the district court's grant of a Rule 12(b)(6) motion to dismiss de novo, accepting all factual claims in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128, 135 n.11 (2d Cir. 2015) (quoting *In re Herald* (*Herald I*), 730 F.3d 112, 117 (2d Cir. 2013)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### II. SLUSA Preclusion

SLUSA precludes private parties from filing in federal or state court (1) a covered class action (2) based on state law claims, (3) alleging that defendants made "a misrepresentation or omission of a material fact" or "used or employed any manipulative or deceptive device or contrivance" (4) "in connection with" the purchase or sale of (5) covered securities. 15 U.S.C. § 78bb(f)(1); *see also Romano v. Kazacos*, 609 F.3d 512, 518 (2d Cir. 2010); *Brown v. Calamos*, 664 F.3d 123, 124 (7th Cir. 2011) ("SLUSA is designed to prevent plaintiffs from migrating to state court

in order to evade rules for federal securities litigation in the Private Securities Litigation Reform Act of 1995 . . . ." (internal quotation marks omitted)).

There is no dispute that Rayner filed a covered class action based on state law claims involving covered securities. We therefore focus our analysis below on the third and fourth elements of SLUSA preclusion: First, whether Rayner has alleged fraud in the form of "a misrepresentation or omission of a material fact" or use of a "manipulative or deceptive device or contrivance," and second, if so, whether that alleged fraud is "in connection with" the purchase or sale of covered securities.

In assessing whether Rayner's allegations fall within the ambit of SLUSA, we emphasize substance over form. "Since SLUSA requires our attention to both the pleadings and the realities underlying the claims, plaintiffs cannot avoid SLUSA merely by consciously omitting references to securities or to the federal securities law." *Herald I*, 730 F.3d at 119 (quoting *Romano*, 609 F.3d at 523) (internal quotation marks omitted); *see also Fleming v. Charles Schwab Corp.*, 878 F.3d 1146, 1153 (9th Cir. 2017) ("[W]e must determine if the Plaintiffs' claims, stripped of formal legal characterization, could have been pursued under § 10(b) and Rule 10b-5."); *Holtz v. JPMorgan Chase Bank, N.A.*, 846 F.3d 928, 930–31 (7th Cir.)

("[SLUSA] is designed to prevent persons injured by securities transactions from engaging in artful pleading . . . in order to evade limits on securities litigation that are designed to block frivolous or abusive suits. . . . Allowing plaintiffs to avoid [SLUSA] by contending that they have 'contract' claims . . . would render [SLUSA] ineffectual, because almost all federal securities suits could be recharacterized as contract suits about the securities involved."), *cert. denied*, 138 S. Ct. 170 (2017).

## III.    Fraudulent Conduct

We agree with the district court that, as to the third element, the gravamen of Rayner's Complaint is that E*TRADE made "material misrepresentations and omissions that were designed to induce clients to execute non-directed, standing limit orders with E*TRADE even though E*TRADE allegedly had no intention of fulfilling its purported fiduciary obligations." *Rayner*, 248 F. Supp. 3d at 502. Rayner describes his "breach of duty claim [as] based on E*TRADE's breach of a *non-fraud* based fiduciary duty." Pl.-Appellant Br. 15 (emphasis added). But "plaintiffs should not be permitted to escape SLUSA by artfully characterizing a claim as dependent on a theory other than falsity when falsity nonetheless is essential to the claim . . . ." *In re Kingate*, 784 F.3d at 140.

Here, the substance of Rayner's Complaint plainly alleges fraudulent conduct. According to Rayner, E*TRADE promises that it will provide best execution for its client's limit orders by "put[ting] the interests of its customers ahead of its own . . . so that the resultant price to the customer is as favorable as possible." J.A. 13. When clients place limit orders with E*TRADE, they expect that E*TRADE will help them "buy or sell a stock at a specified price . . . *or better*." *Id.* at 9 n.1 (emphasis added). On its website, E*TRADE also announces that "we do everything possible to seek best execution each and every time you trade" in order to deliver "the right blend of execution price, speed, and price improvement." *Id.* at 13. Despite these representations (*i.e.,* through "misrepresentation[s] . . . of a material fact"), Rayner alleges that E*TRADE violated its best execution duty by placing its own interests first and routing clients' trades to the trading venues that paid the highest "kickbacks" (*i.e.,* by use of a "manipulative or deceptive device"). As a result, instead of delivering optimal execution prices and price improvement in executing its clients' limit orders, E*TRADE was "more likely to trade when the price move[d] against [its clients] and less likely to trade when prices move[d] in their favor." *Id.* at 20. The fact that the "resulting market price" would be more unfavorable than

expected as a result of E*TRADE's routing practice was "not known to Rayner" or other clients at the time that they decided to purchase or sell the securities through E*TRADE—Rayner was therefore induced by an "omission of a material fact" to purchase and sell securities through E*TRADE.   Pl.-Appellant Reply Br. 13. And likewise, rather than speedily purchasing and selling securities for its clients, and unbeknownst to those clients, the limit orders that E*TRADE executed on their behalf were "fill[ed] slower," J.A. 18, and "up to 25% less likely to be executed," *id.* at 19.

Rayner argues nonetheless that the district court failed to follow this Court's precedent because "[a]s in *In re Kingate*, [Rayner's] claims do not require a showing of false conduct by the named defendants."   Pl.-Appellant Br. 15 (quoting *In re Kingate*, 784 F.3d at 152) (internal quotation marks and brackets omitted).   This argument is meritless.   *In re Kingate* held that some of plaintiffs' breach of fiduciary duty claims were not precluded by SLUSA because the false conduct at issue in that case was committed by *third parties* rather than by defendants.   784 F.3d at 149 ("SLUSA's preclusion applies when the state law claim is predicated on conduct *of the defendant* . . . ." (emphasis in original)).   Here, in contrast,

10

Rayner's Complaint alleges false conduct on the part of *E\*TRADE*, not third parties.

Accordingly, we join our sister circuits in concluding that best execution claims alleging misrepresentations or omissions relating to: (1) a broker's receipt of "kickbacks" from trading venues; and (2) the execution of trades so as to take advantage of such arrangements, satisfy the third element of SLUSA, by alleging securities claims based on fraudulent conduct. *See Zola v. TD Ameritrade, Inc.*, 889 F.3d 920, 923–25 (8th Cir. 2018); *Lewis v. Scottrade, Inc.*, 879 F.3d 850, 854–55 (8th Cir. 2018); *Fleming*, 878 F.3d at 1154–55; *cf. Holtz*, 846 F.3d at 932 ("A fiduciary that makes a securities trade without disclosing a conflict of interest violates federal securities law . . . [and] a broker-dealer that fails to achieve best execution for a client by arranging a trade whose terms favor the dealer rather than the client has a securities problem, not just a state-law contract or fiduciary-duty problem."); *In re Morgan Stanley & Co. Inc.*, Exchange Act Release No. 55726, 2007 WL 1364323, at *8 (May 9, 2007) ("Failure to satisfy the duty of best execution may constitute a violation of Section 15(c)(1)(A) of the Exchange Act, which makes it unlawful for any broker or dealer to effect any transaction in . . . any security by means of any

11

manipulative, deceptive, or other fraudulent device or contrivance." (internal quotation marks omitted)).

## III. "In Connection With"

As to SLUSA's fourth element, we also agree with the district court that E*TRADE's alleged fraudulent conduct arose "in connection with" the purchase or sale of covered securities. To satisfy this element, "the fraud perpetrated by [E*TRADE must be] material to a decision by one or more individuals (other than the fraudster) to buy or to sell a covered security." *In re Herald (Herald II)*, 753 F.3d 110, 113 (2d Cir. 2014) (per curiam) (quoting *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 387 (2014) (internal quotation marks omitted). As discussed above, E*TRADE's fraudulent failure to provide best execution allegedly caused Rayner and other E*TRADE clients to purchase and sell securities at unfavorable prices and at lower volumes than expected. It is frivolous to suggest that negatively influencing the price and quantity at which clients may buy and sell securities would not "make[] a significant difference to someone's decision to purchase or to sell a covered security." *Troice*, 571 U.S. at 387; *see also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 89 (2006) ("[F]raudulent manipulation of stock prices—unquestionably qualifies as fraud 'in connection with the purchase or sale'

12

of securities . . . ."); *Kurz v. Fid. Mgmt. & Research Co.*, 556 F.3d 639, 641 (7th Cir. 2009) (rejecting as "frivolous" the argument that "the duty of best execution is not 'in connection with the purchase or sale' of securities").

The "outer limit" delineated by the Supreme Court in *Troice* does not suggest a contrary result. *Herald II*, 753 F.3d at 113 ("*Troice* clarifies the scope of SLUSA by delineating an outer limit to its requirement that the fraud be 'in connection with the purchase or sale of a covered security.'"). As we explained in *Herald II*, the Supreme Court held that "the closest that the plaintiffs in *Troice* could get" to satisfying the "in connection with" requirement was the "too remote" allegation that the plaintiffs were induced to purchase *uncovered* (not covered) securities, as a result of the defendants' fraudulent representations that the *defendants* (not the plaintiffs) would purchase covered securities. *Id.*

Although Rayner does not dispute that the securities at issue were covered securities, Rayner argues that it was *E*TRADE* that was induced to purchase or sell securities, and "[i]f the only party who decides to buy or sell a covered security as a result of a lie is the liar, that is not a 'connection' that matters." Pl.-Appellant Reply Br. 13 (quoting *Troice*, 571 U.S. at 388); *see also Troice*, 571 U.S. at 388 ("[T]he 'someone' making th[e] decision to purchase or sell must be a party other than the

13

fraudster."). As already discussed above, Rayner's claim amounts to an allegation that E*TRADE's routing practice fraudulently induced *the plaintiffs* (not E*TRADE, the defendant) to purchase and sell securities at less favorable prices and lower volumes than anticipated: E*TRADE's clients "'*tried to take . . .* an ownership position" in covered securities at the optimal price and quantity. *Herald II*, 753 F.3d at 113 (quoting *Troice*, 571 U.S. at 389) (emphasis in original). "That [E*TRADE] fraudulently failed to follow through on its promise to place the investments in covered securities" based on best execution standards "does not in any respect remove this case from the ambit of SLUSA as defined in *Troice*." *Id.*; *see also Zola*, 889 F.3d at 926 ("[T]he broker's 'failure to provide best execution was material to every trade in covered securities that [the] customer [] chose to have [the broker] execute.'" (quoting *Lewis*, 879 F.3d at 853)); *Fleming*, 878 F.3d at 1155 ("[T]he false promise of best execution . . . caused losses directly resulting from what clients believed to be legitimate securities transactions. The net price obtained when purchasing or selling a security is plainly material to a buyer or seller, and the alleged breach here coincided with securities transactions." (internal quotation marks and alterations omitted)). *Cf. Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 135 F.3d 266, 269 (3d Cir. 1998) ("[A] broker-dealer, by

14

accepting an order without price instructions, impliedly represents that the order will be executed in a manner consistent with the duty of best execution and that a broker-dealer who accepts such an order while intending to breach that duty makes a misrepresentation that is material to the purchase or sale.").

## CONCLUSION

We have considered all of Rayner's remaining arguments and find them to be meritless.   For the foregoing reasons, we AFFIRM the judgment of the district court.