Miller v. Metropolitan Life Insurance Co.

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2019

(Submitted: May 29, 2020          Decided: October 29, 2020)

Docket No. 19-3383-cv

_____

DALE MILLER AND JOHN F. BARTON, JR., ON BEHALF OF
THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,

*Plaintiffs-Appellants*,

v.

METROPOLITAN LIFE INSURANCE COMPANY, A NEW YORK
CORPORATION,

*Defendant-Appellee*.*

_____

Before:

RAGGI, LOHIER, and MENASHI, *Circuit Judges*.

The Plaintiffs-Appellants enrolled in a Group Variable Universal Life Insurance (GVUL) policy offered by the Metropolitan Life Insurance Company (MetLife).  During the enrollment process, neither plaintiff indicated that he smoked tobacco, but MetLife nevertheless designated them as tobacco smokers, thus triggering their payment of higher insurance premiums.  When MetLife refused to refund the amount of the overpayments, the plaintiffs filed this action claiming breach of contract and tort violations

---

* The Clerk of Court is directed to amend the caption as set forth above.

under New York law.  The United States District Court for the Southern District of New York (Torres, J.) dismissed the plaintiffs' claims as time-barred under New York's applicable statutes of limitations.  For the following reasons, we **AFFIRM**.

Judge Menashi concurs in the judgment in a separate opinion.

Joshua A. Fields, Kirtland & Packard LLP, Redondo Beach, CA, Nicholas Farnolo, Napoli Shkolnik, PLLC, Melville, NY, *for Plaintiffs-Appellants* Dale Miller and John F. Barton, Jr., on Behalf of Themselves and All Others Similarly Situated.

Lee E. Bains, Jr., Edward M. Holt, Caleb C. Wolanek, Maynard Cooper & Gale, P.C., Birmingham, AL *for Defendant-Appellee* Metropolitan Life Insurance Company, a New York Corporation.

LOHIER, *Circuit Judge*:

The Plaintiffs-Appellants are two commercial airline pilots who enrolled in a Group Variable Universal Life Insurance (GVUL) policy offered by the Metropolitan Life Insurance Company (MetLife) twenty years ago. During the enrollment process, MetLife asked the plaintiffs whether they had recently started or stopped using tobacco products.  The plaintiffs, who had never used tobacco, declined to answer.  MetLife nonetheless designated them as smokers, thus triggering the calculation and payment of higher insurance premiums.  The plaintiffs learned of MetLife's erroneous smoker designation sixteen years later.  Miller then asked MetLife for a refund to

2

compensate him for the total amount of his premium overpayments. MetLife refused. In response, the plaintiffs filed the instant contract and tort action against MetLife. The United States District Court for the Southern District of New York (Torres, J.) dismissed the plaintiffs' claims, concluding, as relevant here, that they were time-barred under New York's statutes of limitations. We agree that the plaintiffs' claims are time-barred and **AFFIRM** the District Court's judgment.

## BACKGROUND

Because the plaintiffs appeal from a judgment "dismissing the complaint on the pleadings, we accept as true the facts alleged in the complaint . . . and we may consider documents incorporated into or integral to the complaint." WC Capital Mgmt., LLC v. UBS Sec., LLC, 711 F.3d 322, 325 (2d Cir. 2013).

I

Dale Miller, a pilot with United Airlines, has received life insurance coverage from MetLife since 1990. In 2000 MetLife informed Miller that it would be changing the type of policy in which Miller was enrolled to the GVUL policy. To join the GVUL policy, Miller had to complete an enrollment form that "require[d] enrollees to select" one of two "status changes," either

3

"From Smoker to Non-Smoker" or "From Non-Smoker to Smoker." Joint App'x 847. Miller, who never smoked, "left this section blank, as the only two options did not apply to him." Id. at 848. The GVUL policy became effective in June 2000. Among other things, it obligated MetLife to calculate Miller's premiums using a "reasonable method." Id. at 874. Unfortunately, MetLife used a method of calculating Miller's premiums that wrongly assumed that he was a smoker and charged Miller higher premiums as a result.

Miller paid the overcharged premiums for sixteen years, until October 2016, when he discovered MetLife's error. Miller then notified his friend and fellow pilot John F. Barton, Jr. about the error. Barton, who also held a GVUL policy with MetLife, confirmed that he also had been charged higher premiums starting in 2000 based on MetLife's mistaken designation of him as a smoker. Miller thereafter requested that MetLife return his premium overpayments immediately, but MetLife refused.

II

In 2017 both Miller and Barton filed this lawsuit against MetLife seeking largely to recover the total amount of their overpaid premiums. Their operative complaint, filed on January 4, 2019, alleged four causes of action

4

under New York common law: (1) breach of contract; (2) contractual breach of the implied covenant of good faith and fair dealing; (3) tortious breach of the duty of good faith and fair dealing; and (4) negligence. The District Court dismissed each claim, concluding, as relevant here, that they were time-barred under New York's applicable statutes of limitations.

This appeal followed.

## DISCUSSION

### I

On appeal, Miller and Barton argue that the District Court erred in dismissing their breach of contract claim.[1] "We review de novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Dolan v. Connolly, 794 F.3d 290, 293 (2d Cir. 2015) (quotation marks omitted).

In support of their breach-of-contract claim, the plaintiffs alleged that MetLife failed to use a "reasonable method" to calculate their premiums, in

---

[1] Miller and Barton do not contest the District Court's dismissal of their second, third, and fourth causes of action. We accordingly affirm the District Court's judgment dismissing those claims. See NRP Holdings LLC v. City of Buffalo, 916 F.3d 177, 189 n.6 (2d Cir. 2019).

violation of the GVUL policy's terms, when it charged them smokers' rates despite their non-smoking status. We conclude, as did the District Court, that this claim is time barred under New York law.

In New York, "an action upon a contractual obligation or liability, express or implied," "must be commenced within six years" of the alleged contractual breach. N.Y. C.P.L.R. 213; see Lehman XS Tr., Series 2006-GP2 by U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc., 916 F.3d 116, 125 (2d Cir. 2019). Miller and Barton do not dispute that MetLife's alleged breach first occurred in 2000 and that the statute of limitations for their breach-of-contract claim would, unless tolled, have expired after 2006. Instead, Miller and Barton rely on New York's continuing-violation doctrine[2] to argue that the statute of limitations was tolled at least through the approximately sixteen-year period of their premium overpayments to MetLife. Under that doctrine, "where a contract provides for continuing performance over a period of time, each breach may begin the running of the statute anew such

---

[2] New York courts sometimes refer to the doctrine as the continuing-wrong doctrine. See, e.g., Carey v. Trs. of Columbia Univ. in City of N.Y., 113 N.Y.S.3d 32, 33 (1st Dep't 2019); Garron v. Bristol House, Inc., 79 N.Y.S.3d 265, 267 (2d Dep't 2018); Affordable Hous. Assocs., Inc. v. Town of Brookhaven, 54 N.Y.S.3d 122, 126 (2d Dep't 2017).

that accrual occurs continuously." Stalis v. Sugar Creek Stores, Inc., 744

N.Y.S.2d 586, 587 (4th Dep't 2002) (quotation marks omitted).

But the continuing-violation doctrine does not toll the statute of limitations in this case. New York courts have explained that tolling based on the doctrine "may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct[.]" Salomon v. Town of Wallkill, 107 N.Y.S.3d 420, 422 (2d Dep't 2019) (quotation marks omitted). Even when viewed in the light most favorable to Miller and Barton, the breach-of-contract claim at issue in this case rests on a single allegedly unlawful act in 2000, namely, MetLife's initial designation of both plaintiffs as smokers. Any subsequent premium that MetLife charged Miller and Barton "represent[ed] the consequences of [that allegedly] wrongful act[] in the form of continuing damages, and was not an independent wrong in itself." Id. (quotation marks omitted); see Henry v. Bank of Am., 48 N.Y.S.3d 67, 70 (1st Dep't 2017) (defendants' monthly billings of plaintiff for fees related to a credit-protection program in which plaintiff alleged he never enrolled qualified as "a single breach[] with damages increasing as the breach continued"); Hudson Envelope Corp. v. Klausner, 670 N.Y.S.2d 104, 104 (1st

7

Dep't 1998) (annual renewals of a health insurance policy "that allegedly duplicated coverage that plaintiff already had . . . constitute[d] only new instances of damage, and [were] therefore irrelevant for limitations analysis").

For this reason, we hold that the continuing-violation doctrine did not toll the limitations period for Miller and Barton's breach-of-contract claim against MetLife.  The claim is therefore time barred under New York law.  Because the statute of limitations bars the only dismissed claim that is at issue on appeal, we decline to address the District Court's alternative rulings in favor of MetLife.

II

A word on the concurrence.  Judge Menashi would affirm the District Court's judgment on the broader ground that the Securities Litigation Uniform Standards Act, Pub. L. No. 105–353, § 101, 112 Stat. 3227 (1998) (SLUSA), precludes our jurisdiction over this action because the plaintiffs' contract claims sound in fraud.  See 15 U.S.C. § 78bb(f)(l) (pronouncing that a state law class action for damages cannot be maintained in federal or state court if it alleges "misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security").  But resolving

8

whether SLUSA presents a jurisdictional bar, and whether that bar applies here, is a fraught and unnecessary endeavor. Fraught because of the dueling views that this difficult issue has already inspired, leaving our own caselaw uncertain and sister circuits split.[3] Unnecessary because, as we have repeatedly explained in different statutory contexts, "[s]o long as we are satisfied that we have Article III jurisdiction, we have discretion to decline to resolve difficult jurisdictional questions" like this one. Official Comm. of Unsecured Creditors of WorldCom, Inc. v. S.E.C., 467 F.3d 73, 81 (2d Cir.

---

[3] We have not definitively held that SLUSA preclusion is jurisdictional, and our precedent and decisions of our sister circuits suggest that the issue is not clear-cut. Compare In re Kingate Mgmt. Ltd. Litig., 784 F.3d 128, 135 n.9 (2d Cir. 2015) (suggesting SLUSA preclusion is jurisdictional), with Rayner v. E*TRADE Fin. Corp., 899 F.3d 117, 118–19 (2d Cir. 2018) (affirming district court's merits dismissal under Rule 12(b)(6) of SLUSA-precluded claims). See also Hampton v. Pac. Inv. Mgmt. Co., 869 F.3d 844, 847 (9th Cir. 2017) (SLUSA preclusion is jurisdictional); LaSala v. Bordier et Cie, 519 F.3d 121, 129 n.7 (3d Cir. 2008) (same); Brown v. Calamos, 664 F.3d 123, 127–28 (7th Cir. 2011) ("There is no merit to the suggestion that . . . SLUSA is jurisdictional."). On the merits, moreover, precedent demonstrates how hard it is to determine whether a misrepresentation or omission that is not an "essential element" of a claim nonetheless is necessary to the claim so as to trigger SLUSA's bar. In Kingate, for example, we held that SLUSA did not preclude investors' breach of contract and fiduciary duty claims against "feeder funds" even though the breach was allegedly accompanied and concealed by misrepresentations and omissions. See 784 F.3d at 133–34. We explained that the latter were not necessary to the contract and fiduciary-duty claims, which were premised on defendants' deviation from a promised investment strategy. See id. at 152. In Rayner, by contrast, we held that SLUSA did preclude investors' claims that E*Trade breached its duty of best execution by failing to disclose its partnering with trading venues that paid kickbacks. See 899 F.3d at 118–19. There, we concluded that misrepresentation was central to plaintiffs' claims. See id. at 120–21.

9

2006).  More specifically, as we recently had occasion to reiterate, where a question of statutory (non-Article III) jurisdiction is complex and the claim fails on other more obvious grounds, this Court can assume hypothetical jurisdiction in order to dismiss on those obvious grounds.  See Butcher v. Wendt, --- F.3d ---, 2020 WL 5637594, at *5 (2d Cir. Sept. 22, 2020) ("[W]e may assume hypothetical statutory jurisdiction in order to resolve this appeal on the merits because the Rooker-Feldman doctrine does not implicate Article III jurisdiction," and because doing so is "particularly appropriate . . . where the jurisdictional issue is both novel and arguably complex" and plaintiffs' "claims are plainly meritless").[4]

---

[4] See also Conyers v. Rossides, 558 F.3d 137, 150 (2d Cir. 2009) (assuming hypothetical statutory jurisdiction); Ajlani v. Chertoff, 545 F.3d 229, 237–38 (2d Cir. 2008) (assuming naturalization jurisdiction pursuant to 8 U.S.C. § 1447(b)); Ivanishvili v. U.S. Dep't of Justice, 433 F.3d 332, 338 n.2 (2d Cir. 2006) (assuming statutory jurisdiction under 8 U.S.C. § 1158(a)(3) "where the jurisdictional issues are complex and the substance of the claim is . . . plainly without merit"); Marquez-Almanzar v. I.N.S., 418 F.3d 210, 216 n.7 (2d Cir. 2005) ("The jurisdictional prerequisites" of 8 U.S.C. § 1252(b)(5) "are not a bar to our assumption of hypothetical jurisdiction."); United States v. Canova, 412 F.3d 331, 348 (2d Cir. 2005) (assuming hypothetical jurisdiction where "the jurisdictional challenge" is statutory); Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine, 311 F.3d 488, 491 (2d Cir. 2002) (assuming jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602–1611, to address question of forum non conveniens); United States v. Miller, 263 F.3d 1, 4 n.2 (2d Cir. 2001) ("exercising a form of hypothetical jurisdiction" in connection with sentencing); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 816 & n.11 (2d Cir. 2000) (assuming jurisdiction "as to whether relation back for purposes of Rule 15(c) [of the Federal Rules of Civil Procedure] raises jurisdictional issues"); Oliva v. U.S. Dep't of Justice, 433 F.3d

Miller and Barton's breach-of-contract claim is plainly time-barred under New York law. That is "a sufficient ground for deciding this case, and the cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more—counsels us to go no further." PDK Labs. Inc. v. U.S. D.E.A., 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring).

**CONCLUSION**

For the foregoing reasons, the judgment of the District Court is **AFFIRMED**.

---

229, 232 (2d Cir. 2005) (exercising hypothetical jurisdiction); Guaylupo-Moya v. Gonzales, 423 F.3d 121, 132 n.10 (2d Cir. 2005) (same); Abimbola v. Ashcroft, 378 F.3d 173, 180 (2d Cir. 2004) (same).

MENASHI, *Circuit Judge*, concurring in the judgment:

The court does not address whether the district court was right that jurisdiction is lacking. Instead, the court affirms the judgment on the ground that the applicable statute of limitations bars recovery on the plaintiffs' breach-of-contract claim.

I do not agree with the court that we "can assume hypothetical jurisdiction" to avoid deciding whether we have jurisdiction over this case. *Ante* at 10. The Supreme Court has rejected the practice of "'assuming' jurisdiction for the purpose of deciding the merits—the 'doctrine of hypothetical jurisdiction'"—because it "carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Far from exhibiting "judicial restraint," *ante* at 11, "[f]or a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires," *Steel Co.*, 523 U.S. at 101-02. For that reason, "before deciding any case we are required to assure ourselves that the case is properly within our subject matter jurisdiction." *Wynn v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001). No matter how "fraught," the jurisdictional inquiry is never "unnecessary." *Ante* at 9.

Prior cases have distinguished between the jurisdictional limitations of Article III and jurisdictional limitations that Congress has imposed by statute, suggesting that we may sidestep the latter. *See ante* at 9-10. As I have explained at length elsewhere, that conclusion is inconsistent with *Steel Co.* and with the separation of powers. *See generally Butcher v. Wendt*, No. 19-224, 2020 WL 5637594, at *7 (2d Cir. Sept. 22, 2020) (Menashi, J., concurring in part and

concurring in the judgment).[1] In any event, at most these precedents afford us the "discretion" to ignore statutory jurisdictional limitations. *Ante* at 9. "Even if we have that discretion, I respectfully decline to exercise it." *Butcher*, 2020 WL 5637594, at *6 (Menashi, J., concurring in part and concurring in the judgment).

I therefore write separately to address whether, as the district court decided, the Securities Litigation Uniform Standards Act of 1998 (SLUSA), Pub. L. No. 105-353, 112 Stat. 3227, precludes jurisdiction over this action. *Miller v. Metro. Life Ins. Co.*, No. 17-CIV-7284, 2019 WL 4450637, at *5 (S.D.N.Y. Sept. 17, 2019); *see also Miller v. Metro. Life Ins. Co.*, No. 17-CIV-7284, 2018 WL 5993477, at *4 (S.D.N.Y. Nov. 15,

---

[1] *Accord Steel Co.*, 523 U.S. at 101 ("The statutory and (especially) constitutional elements of jurisdiction are an essential ingredient of separation and equilibration of powers, restraining the courts from acting at certain times, and even restraining them from acting permanently regarding certain subjects."); *United States v. Assa Co.*, 934 F.3d 185, 188 (2d Cir. 2019) (noting that federal courts "have limited subject matter jurisdiction" and "may not adjudicate a case or controversy unless authorized by *both* Article III of the United States Constitution and a federal jurisdictional statute.") (emphasis added); *Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 519 (D.C. Cir. 2018) (Edwards, J., concurring) ("The *Steel Co.* rule is thus now best understood to require the federal courts to decide *jurisdictional* issues first before reaching the merits …. [T]here is no priority given to 'Article III jurisdiction' over 'statutory jurisdiction.'"); *Friends of the Everglades v. EPA*, 699 F.3d 1280, 1288 (11th Cir. 2012) ("[T]he Supreme Court has explicitly rejected the theory of 'hypothetical jurisdiction.' … [A]n inferior court must have both statutory and constitutional jurisdiction before it may decide a case on the merits."); *Seale v. INS*, 323 F.3d 150, 156 (1st Cir. 2003) ("A federal court acts 'ultra vires' regardless of whether its jurisdiction is lacking because of the absence of a requirement specifically mentioned in Article III, such as standing or ripeness, or because Congress has repealed its jurisdiction to hear a particular matter.").

2018). Because I agree with the district court that we lack jurisdiction, I concur in the judgment.

We have suggested that a dismissal under SLUSA is jurisdictional, *In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128, 135 n.9 (2d Cir. 2015), and the Ninth and Third Circuits have expressly so held, *see Hampton v. Pac. Inv. Mgmt. Co.*, 869 F.3d 844, 847 (9th Cir. 2017); *LaSala v. Bordier et Cie*, 519 F.3d 121, 129 n.7 (3d Cir. 2008).[2] I agree with the Ninth Circuit that SLUSA's command that "[n]o covered class action … *may be maintained in any State or Federal court*" if it meets the statutory requirements is best understood as a limit on our jurisdiction. *Hampton*, 869 F.3d at 847 (quoting 15 U.S.C. § 77p(b)).

SLUSA "precludes private parties from filing in federal or state court (1) a covered class action (2) based on state law claims, (3) alleging that defendants made 'a misrepresentation or omission of a material fact' or 'used or employed any manipulative or deceptive device or contrivance' (4) 'in connection with' the purchase or sale of (5) covered securities." *Rayner v. E\*TRADE Fin. Corp.*, 899 F.3d 117, 119-20 (2d Cir. 2018) (quoting 15 U.S.C. § 78bb(f)(1)).[3] The plaintiffs challenge two aspects of the district court's decision to dismiss their complaint under SLUSA. First, they contend that they were denied a fair opportunity to present evidence that the Group Variable Universal Life (GVUL) policy was not a "covered security." Second, they contend that their complaint does not allege—in form or in

---

[2] The Seventh Circuit disagrees. *See Brown v. Calamos*, 664 F.3d 123, 127-28 (7th Cir. 2011).

[3] SLUSA "amends both the Securities Act of 1933 and the Securities Exchange Act of 1934. The 1933 amendments are codified at 15 U.S.C. § [77]p, and the 1934 Act amendments, which are substantially similar, are codified at 15 U.S.C. § 78bb(f)." *Romano v. Kazacos*, 609 F.3d 512, 517 n.1 (2d Cir. 2010).

substance—a misrepresentation or omission of a material fact or the use of a manipulative or deceptive device. Neither challenge has merit.

SLUSA defines "covered security" as "a security that satisfies the standards for a covered security specified in paragraph (1) or (2) of section 77r(b) of this title, at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred." 15 U.S.C. § 77p(f)(3). Section 77r(b)(2) states that a "security is a covered security if such security is a security issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940." 15 U.S.C. § 77r(b)(2).

The plaintiffs argue that they were prejudiced by the magistrate judge's decision to review MetLife's motion to dismiss on SLUSA grounds under Federal Rule of Civil Procedure 12(b)(1) rather than Federal Rule of Civil Procedure 12(b)(6). According to the plaintiffs, this prevented them from presenting evidence that their suit is not barred by SLUSA because one plaintiff "selected the fixed account option for his GVUL policy." Appellants' Br. 21. But, contrary to the plaintiffs' position on appeal, the magistrate judge acted properly in considering a declaration submitted by MetLife and publicly available prospectuses in determining whether the GVUL policy was a covered security and thus whether it had jurisdiction over the action. *See APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) ("[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings.") (quoting *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999)).

In doing so, the magistrate judge noted that the plaintiffs "do not seriously contest" that the GVUL policy is a covered security. *Miller v. Metro. Life Ins. Co.*, No. 17-CIV-7284, 2018 WL 6625096, at *6 (S.D.N.Y. Sept. 25, 2018). At no point did the plaintiffs seek to submit evidence regarding the fixed account option. They did not do so when objecting to the magistrate judge's report and recommendation in October 2018, when filing their second amended complaint in January 2019, or when responding to MetLife's motion to dismiss the second amended complaint in February 2019. There is therefore no reason to credit the plaintiffs' claim of prejudice or to disturb the district court's conclusion that the GVUL policy is a covered security.

Regardless, a plaintiff's purchase of the fixed interest option would not exempt the GVUL policy from SLUSA's definition of a covered security. It is true that a variable annuity is a covered security while a single fixed annuity is not. *See Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 109 (2d Cir. 2001). It does not follow, however, that a fixed annuity option offered within—and indivisible from—a variable annuity policy can exempt the entire policy from SLUSA, even if the policyholder chooses only the fixed option.

Adding a fixed option does not transform a variable annuity product. "SLUSA coverage is dependent on the structure of the annuity, not on how an annuitant chooses to allocate funds within the annuity." *Winne v. Equitable Life Assurance Soc'y of U.S.*, 315 F. Supp. 2d 404, 411 (S.D.N.Y. 2003) (Lynch, J.). A product offering a mix of fixed and variable options is a variable product rather than a fixed product. In other words, a fixed option cannot remove variance from a variable product. For that reason, an indivisible hybrid fixed-variable annuity product such as the GVUL policy remains a variable annuity subject to SLUSA.

Two district courts in this circuit have held that the selection of a fixed option within a variable annuity plan does not render the plan something other than a covered security. If the plaintiffs purchased a policy "that meets the structural definition of a covered security under SLUSA," whether the plaintiffs "chose to utilize the registered separate account that creates SLUSA coverage is irrelevant." *Winne*, 315 F. Supp. 2d at 411; *see also Montoya v. N.Y. State United Teachers*, 754 F. Supp. 2d 466, 472 (E.D.N.Y. 2010) ("Simply stated, there is no support for the argument that a court is free to parse out a single investment option from the various retirement programs offered to Plaintiffs to render the complaint outside of the definition of a covered security."). That conclusion makes sense: SLUSA applies to the annuity, not to the annuitant. A policyholder might not utilize the policy's specific features that make it a covered security, but the product itself does not change.

The plaintiffs' second challenge also fails. In assessing whether allegations "fall within the ambit of SLUSA, we emphasize substance over form." *Rayner*, 899 F.3d at 120. We have said, for example, that a plaintiff cannot "escape SLUSA by artfully characterizing a claim as dependent on a theory other than falsity when falsity nonetheless is essential to the claim." *In re Kingate*, 784 F.3d at 140.

The district court concluded that although the plaintiffs' claim is "styled as a breach of contract, [the plaintiffs] are complaining about … deception." *Miller*, 2019 WL 4450637, at *4. I agree. The plaintiffs in essence "allege fraud in the form of … use of a 'manipulative or deceptive device or contrivance.'" *Rayner*, 899 F.3d at 120 (quoting 15 U.S.C. § 78bb(f)(1)). The first amended complaint expressly alleged that MetLife engaged in fraud, and the district court concluded that SLUSA precluded the plaintiffs' fraud claim. *Miller*, 2019 WL 4450637, at *2. The plaintiffs subsequently amended their

complaint to challenge the same underlying actions while attempting to "avoid any ostensible allegations of fraudulent conduct." *Id.*, at \*5. The second amended complaint recasts the original claim of fraud as a claim that MetLife breached its contract with the plaintiffs by failing to use a "reasonable method" to calculate premiums. But "the realities underlying the claim[]" remain the same. *Rayner*, 899 F.3d at 120. The heart of the plaintiffs' allegations is that the enrollment form was deceptive because rather than ask a direct question about smoking status, the form required enrollees to select either "From Smoker to Non-Smoker" or "From Non-Smoker to Smoker" as their "Smoker/Non-Smoker Status Change" and used that information to determine smoking status. J. App'x 847. This deceptive device caused the plaintiffs to be designated as smokers and charged higher premiums. We can therefore "conclude without difficulty" that the plaintiffs' "claim is a securities fraud wolf dressed up in a breach of contract sheep's clothing." *Felton v. Morgan Stanley Dean Witter & Co.*, 429 F. Supp. 2d 684, 693 (S.D.N.Y. 2006). The district court correctly rejected the plaintiffs' attempt to evade SLUSA's jurisdictional bar through artful pleading. *Miller*, 2019 WL 4450637, at \*4.[4]

---

[4] The plaintiffs argue that they avoid SLUSA by pleading their claim as a breach of MetLife's contractual obligation to use a "reasonable method" for computing premiums. Yet SLUSA applies whenever a plaintiff's claims rely on a defendant's conduct amounting to misrepresentation, omission, manipulation, or deception. Even if a complaint "facially … alleges a common law claim for breach of contract," what matters are the "substantive allegations." *Felton*, 429 F. Supp. 2d at 693. "When the success of a class action claim depends on a showing that the defendant committed false conduct conforming to SLUSA's specifications, the claim will be subject to SLUSA." *Kingate*, 784 F.3d at 149. Here, the success of the plaintiffs' breach-of-contract claim depends on showing that the defendant deceived class members by using a misleading form to determine

For the foregoing reasons, I would affirm the district court's dismissal for lack of subject-matter jurisdiction.[5] Because the court sidesteps our lack of jurisdiction to reach the merits of the plaintiffs' breach-of-contract claim, I concur only in the judgment.

---

premiums. Therefore, SLUSA applies to the plaintiffs' breach-of-contract claim.

[5] This dismissal is "without prejudice to the plaintiff[s] bringing the same substantive claims on an individual basis in state court." *Hampton*, 869 F.3d at 846. That is because, under SLUSA, "the district judge had no jurisdiction to reach the merits of [the plaintiffs'] claims." *Id.* at 847; *see Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999) ("[W]here a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice.").